Fred H. HARMSEN, et al.,
Plaintiffs-Appellees,

v.

C. Arnholt SMITH, et al.,
Defendants-Appellants.

Nos. 80–5097 to 80–5099.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1982.

Decided Dec. 1, 1982.

Thomas R. Sheridan, Simon & Sheridan, Los Angeles, Cal., David E. Monahan, Gray, Cary, Ames & Frye, San Diego, Cal., Alan G. Martin, Horvitz & Greines, Encino, Cal., for defendants-appellants.

Susan Illston, San Mateo, Cal., argued for plaintiffs-appellees; Susan Illston, San Mateo, Cal., Gerald R. Schmelzer, San Diego, Cal., on brief.

Before SKOPIL and SCHROEDER, Circuit Judges, and AGUILAR,* District Judge.

SCHROEDER, Circuit Judge.

This case arose out of the failure of United States National Bank (USNB) of San Diego and the disintegration of the financial empire of its former officer, director, and controlling shareholder, C. Arnholt Smith (C. Arnholt). C. Arnholt, in connection with members of his family and the directors and officers of corporations he controlled, allegedly engaged in continuing

---

* Honorable Robert P. Aguilar, United States District Judge, Northern District of California, sitting by designation.

fraudulent activities from 1962 until 1973. Specifically, C. Arnholt, with his daughter Carol Smith Shannon (Shannon), his brother John, his wife Helen, numerous directors of USNB, and others allegedly materially misled USNB shareholders about the many illegal transactions in which defendants were engaged. These transactions generally took three forms: (1) misrepresentation of loan purposes on the books of USNB; (2) granting of loans in excess of National Bank Act (Bank Act) requirements and for insufficient collateral; and (3) funneling USNB loans for undisclosed personal gain.

On October 18, 1973, the Comptroller of the Currency declared USNB insolvent and appointed the Federal Deposit Insurance Corporation receiver. Subsequently, two class actions on behalf of minority shareholders were filed against C. Arnholt and the other USNB directors; Shannon, Helen, John, and the corporation John controlled, First National Finance Corporation (FNFC), were also named as defendants, along with Phillip A. Toft (Toft), an officer and director of Westgate-California Corporation, a major conglomerate that included many Smith-controlled businesses. The two suits were consolidated into the present action.

In June 1974, the FDIC moved to intervene and be substituted for the minority shareholders. The district court permitted intervention but ruled that, under the Bank Act, the minority shareholders had a cause of action in their own right against the bank directors. We affirmed on interlocutory appeal, holding that minority shareholders have a cause of action under the Bank Act even when the only damage claimed is the diminution of the value of their shares. *Harmsen v. Smith*, 542 F.2d 496, 499 (9th Cir.1976) (*Harmsen I*).

In May 1979, all directors of USNB, with the exception of C. Arnholt, settled, and were dismissed from the case. A jury trial followed to determine the liability of C. Arnholt, Helen, Shannon, Toft, John, and FNFC. The trial was bifurcated as to questions of liability and damages.

Plaintiffs proceeded in the liability phase of the trial on three general theories. The first theory, an alleged violation of section 93 of the National Bank Act,[1] was tried against C. Arnholt alone. Second, all defendants were alleged to have violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)[2], and SEC Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5 (1981).[3] Primary violations were

1. 12 U.S.C. § 93 provides in pertinent part:
 (a) If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper district or Territorial court of the United States in a suit brought for that purpose by the Comptroller of the Currency, in his own name, before the association shall be declared dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation.

2. Section 10(b) provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

 . . . .
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. SEC Rule 10b–5 provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would

alleged against C. Arnholt; all other defendants were charged with secondary participation in the violations. The secondary section 10(b) theories alleged were "control person" liability under section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), aiding and abetting liability, and liability for conspiracy to violate section 10(b). Third, pendent state claims of fraud, conspiracy to defraud, abuse of control, and conspiracy to abuse control were tried against all parties.

The jury returned a verdict against C. Arnholt on the Bank Act claim, the section 10(b) primary claim, the section 10(b) conspiracy claim, and the four pendent state claims. Helen, Shannon, Toft, John, and FNFC were found liable for secondary violations of section 10(b) and for pendent state violations of fraud, conspiracy to de-

fraud, and conspiracy to abuse control. No defendant except C. Arnholt was found liable for direct abuse of control.[4]

After the jury returned its verdicts in the liability phase of the trial, the district court, pursuant to plaintiffs' request, appointed a special master to gather data to be presented to the jury regarding plaintiffs' damages. The special master sent questionnaires to all USNB shareholders requesting various information, including the date they purchased their shares. The special master prepared two schedules, one based on the actual responses and one based on extrapolations from the actual responses. These schedules were presented to the jury to be considered in its calculation of damages. After instructions by the court, the jury awarded damages of several million dollars on each violation against each defendant.[5]

---

operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**4.** The nine counts were:

| | |
|---|---|
| Count I | Violation of NBA § 93 |
| Count II | § 10(b) primary |
| Count III | § 10(b) controlling person |
| Count IV | § 10(b) aiding and abetting |
| Count V | § 10(b) conspiracy |
| Count VI | Fraud |
| Count VII | Conspiracy to defraud |
| Count VIII | Abuse of control |
| Count IX | Conspiracy to abuse control |

The jury found the defendants liable on the following counts:

| | |
|---|---|
| C. Arnholt | Counts I, II, V, VI, VII, VIII, IX |
| Helen | Counts III, IV, V, VI, VII, IX |
| Shannon | Counts III, IV, V, VI, VII, IX |
| Toft | Counts IV, V, VI, VII, IX |
| John | Counts IV, VI, VII, IX |
| FNFC | Counts IV, VI, VII, IX |

**5.** The jury awarded damages against each defendant in the following amounts:

**C. ARNHOLT SMITH**

| | |
|---|---|
| Count I | $12,298,708.11 |
| Count II | $12,061,417.72 |
| Count V | $ 8,689,021.25 |
| Count VI | $12,061,417.72 |
| Count VII | $11,614,538.21 |
| Count VIII | $11,085,494.77 |
| Count IX | $10,722,476.62 |
| Punitive Damages (Counts VI, VII, VIII, and IX only) | $11,000,000.00 |

**HELEN SMITH**

| | |
|---|---|
| Count III | $ 6,241,170.02 |
| Count IV | $ 6,241,170.02 |
| Count V | $ 6,241,170.02 |
| Count VI | $ 6,241,170.02 |
| Count VII | $ 6,241,170.02 |
| Count IX | $ 5,858,660.91 |
| Punitive Damages (Counts VI, VII, and IX only) | $ 750,000.00 |

**CAROL SMITH SHANNON**

| | |
|---|---|
| Count III | $ 6,241,170.02 |
| Count IV | $ 6,241,170.02 |
| Count V | $ 6,241,170.02 |
| Count VI | $ 6,241,170.02 |
| Count VII | $ 6,241,170.02 |
| Count IX | $ 5,858,660.91 |
| Punitive Damages (Counts VI, VII, and IX only) | $ 3,000,000.00 |

**PHILIP A. TOFT**

| | |
|---|---|
| Count IV | $ 8,689,021.25 |
| Count V | $ 8,689,021.25 |
| Count VI | $ 8,689,021.25 |
| Count VII | $ 8,689,021.25 |
| Count IX | $ 8,083,508.79 |
| Punitive Damages (Counts VI, VII, and IX only) | $ 1.00 |

**JOHN A. SMITH**

| | |
|---|---|
| Count IV | $11,614,538.21 |
| Count VI | $11,614,538.21 |
| Count VII | $11,614,538.21 |
| Count IX | $10,722,476.62 |
| Punitive Damages (Counts VI, VII, and IX only) | $ 1.00 |

**FIRST NATIONAL FINANCE CORPORATION**

| | |
|---|---|
| Count IV | $ 2,861,957.38 |
| Count VI | $ 2,861,957.38 |
| Count VII | $ 2,861,957.38 |
| Count IX | $ 2,868,933.92 |
| Punitive Damages (Counts VI, VII, and IX only) | $ 1.00 |

Punitive damages were also awarded against each defendant with respect to the state law violations. Upon motion of the defendants, the court reduced compensatory damages to the 'maximum amount for which each defendant was found liable under any one count, and retained punitive damages in full.[6]

Each defendant now appeals and raises a number of issues. Aside from questions concerning the general sufficiency of the evidence, the principal contentions of the separate defendants can be summarized as follows:

Helen, joined by the other defendants, focuses her arguments on the propriety of the jury verdict against her under the Securities Exchange Act. As a preliminary matter, she asks this court to reexamine prior holdings that there exists a private right of action under section 10(b).

C. Arnholt does not appeal the adverse verdict of over $12,000,000 for violation of the Bank Act. He does contend, however, that any liability based on section 10(b) or on the pendent state claims was improper because section 93 of the Bank Act provides the exclusive remedy against a bank director.

All of the defendants, other than C. Arnholt, urge that they could not have been secondarily liable under section 10(b) if no primary violation of the same statute was properly asserted against C. Arnholt. They further argue that if no federal cause of action existed against them under section 10(b), the court was without jurisdiction to consider the pendent state law claims. A key jurisdictional issue is, therefore, the claimed exclusivity of the Bank Act.

John and FNFC's principal argument is that the jury was wrongly instructed to give conclusive effect to the specific findings made in a related bankruptcy case, In re Westgate-California Corp., No. 74–413 (S.D.Cal. Feb. 9, 1978). The court there found that John and FNFC had been involved in fraudulent transactions with

USNB. This court recently reversed that decision. *Westgate-California Corp. v. First National Finance Corp.*, 650 F.2d 1040 (9th Cir.1981).

Defendants also assert that the pendent state claims are wholly derivative and cannot be maintained by the shareholders themselves. Finally, all defendants also claim irregularities with respect to class certification and the damages calculation.

## I

### Preliminary Issues

■ We begin with the assertion by Helen that this case presents an appropriate opportunity to "reexamine" the availability of a private right of action under section 10(b) of the Securities Exchange Act. We find no such need. The Supreme Court has clearly established the right of individual enforcement under section 10(b) and Rule 10b–5. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 729–30, 95 S.Ct. 1917, 1922–23, 44 L.Ed.2d 539 (1975); *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 150–54, 92 S.Ct. 1456, 1470–72, 31 L.Ed.2d 741 (1972); *Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). Helen's suggestion that the recent Supreme Court decisions in *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), and *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), cast some doubt on the continued validity of the private right of action under section 10(b) is not persuasive. Those cases considered private rights of action under different statutory provisions with different legislative histories. They do not indicate that section 10(b) falls short of meeting the test for implying private rights of action set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

---

**6.** With respect to C. Arnholt, for example, damages as shown in footnote 5, *supra*, were reduced to $12,298,708.11 compensatory plus $11,000,000.00 punitive. Damages awarded against the other defendants were reduced similarly.

The next issue is the claimed exclusivity of section 93 of the Bank Act. We address whether pendent state law claims or section 10(b) claims can be maintained against C. Arnholt for conduct that also allegedly violates section 93.

The question of the availability of relief under state law for conduct covered by the Bank Act has not been litigated often. This court has, however, in the earlier interlocutory appeal of this case, *Harmsen I, supra,* considered the issue. In *Harmsen I* we stated that

> [P]endent state law claims asserted by the plaintiffs here must be with respect to causes not authorized by reason of Section 93. Violations of federal law resulting in injuries for which shareholders may bring a personal action under Section 93 must be determined and measured by federal law. The relief afforded for such violations is a federal remedy. State law may not afford a similar remedy.

542 F.2d at 502. The *Harmsen* court relied on a much earlier statement by the Supreme Court in *Chesbrough v. Woodworth,* 244 U.S. 72, 78, 37 S.Ct. 579, 582, 61 L.Ed. 1000 (1917), that section 93 "is exclusive and precludes a common-law liability for fraud and deceit." This conclusion in *Chesbrough,* in turn, was based on the Court's earlier opinion in *Yates v. Jones National Bank,* 206 U.S. 158, 27 S.Ct. 638, 51 L.Ed. 1002 (1907). The *Yates* Court concluded that the Bank Act cause of action must be exclusive as against pendent state claims in order to shield bank directors from standards of liability that varied from state to state. *Id.* at 178, 27 S.Ct. at 645.

■ We thus follow our earlier conclusion in *Harmsen I* that, for purposes of uniformity, state law causes of action are not allowable if the allegedly wrongful conduct comes within the scope of the National Bank Act. Liability against C. Arnholt under the pendent claims cannot be supported to the extent that the section 93 cause of action was based on the same conduct. If, on the other hand, the pendent claims against C. Arnholt were based on conduct outside the reach of the Bank Act, considerations of uniformity would not apply, and section 93 would not bar such claims.

■ The provisions of the Bank Act proscribe specific conduct and are limited in coverage. *See, e.g.,* 12 U.S.C. §§ 82, 84. *See also Harmsen I,* 542 F.2d at 501 (section 93 relief limited to actions proscribed within Chapter 2 of Bank Act). The complaint alleges, and the record clearly shows that C. Arnholt was engaged in fraudulent activity that went far beyond the narrow range of conduct prohibited by the Act. The district court judge specifically so held in his denial of defendants' motion for judgment n.o.v., and we agree. We thus conclude that the district court acted properly in considering the pendent claims against C. Arnholt.

■ An additional defense argument is that, even if section 93 is not the exclusive remedy against C. Arnholt, the district court did not properly distinguish between the two types of conduct and erroneously permitted the jury to consider evidence of C. Arnholt's section 93 violations when it considered liability under the pendent claims. However, defendants never formulated instructions to meet this present objection, and we hold that it is waived. *United States v. Burlington Northern, Inc.,* 500 F.2d 637, 639–40 (9th Cir.1974). *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2552 (1971). Although a formal objection to proposed instructions may not be required when an appellant has previously made his position sufficiently clear to the trial court, *Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766, 769 (9th Cir.1982); *Brown v. Avemco Investment Corp.,* 603 F.2d 1367, 1370–75 (9th Cir.1979), the record in this case does not reveal that defendants ever advised the district court of their view that the instruction did not correctly state the law.

■ A separate question is whether section 93 of the National Bank Act restricts our ability to consider the section 10(b) claims. *Harmsen I* and the Supreme Court authority on which that case relied do not require dismissal; allowing a section 10(b)

cause of action would not subject bank directors to varying standards of liability from state to state. Moreover, the language of the relevant statutes does not suggest that the Bank Act provision is exclusive. Section 10(b) of the 1934 Act and Rule 10b–5 make it unlawful for "any person" to engage in the conduct therein described. Congress did not exclude banks from the coverage of section 10(b), although it did specifically exempt banks from several other provisions of the securities laws. *See, e.g.,* 15 U.S.C. §§ 77c(a)(2), 77*l*(2); *cf.* 15 U.S.C. § 78c(a)(6). As stated by the Fifth Circuit in *Lehigh Valley Trust Co. v. Central National Bank,* 409 F.2d 989, 993 (5th Cir.1969), "[t]hat Congress made no express general exemption for banks under the fraud provisions of either the Securities Act of 1933 or the Securities Exchange Act of 1934 indicates that Congress did not intend any such exemption." *Accord Carroll v. First National Bank of Lincolnwood,* 413 F.2d 353 (7th Cir.), *cert. denied,* 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1969) (banks subject to provisions of section 10(b)). For its part, the Bank Act provision does not contain any language limiting the application of other federal laws to conduct within its reach.

Defendants fail to articulate any reasons for not applying section 10(b) in this context. The application of section 10(b) to bank directors burdens them with no duties or responsibilities that conflict with the directives of the Bank Act. It does impose additional duties or responsibilities, but we must construe the two potentially overlapping statutes in the manner that gives effect to each. We rely on the well recognized principle that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). We therefore find no basis for holding that C. Arnholt, as a bank director subject to liability under the Bank Act, was exempted from liability under the Securities Exchange Act.

The single Supreme Court decision that discusses any relationship between the National Bank Act and the Securities Exchange Act is fully consistent with our conclusion. In *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), the Court held that the venue provision of the Bank Act, 12 U.S.C. § 94, governed venue in a suit against a national banking association for violation of the Securities Exchange Act. Although the focus of the Court in *Radzanower* was on the language and history of the venue provisions, the issue of venue would not have been considered at all had the Court felt that the Securities Exchange Act cause of action was improper because a national bank could be sued only under the Bank Act. We thus hold that there was no error in allowing causes of action under both section 10(b) of the Securities Exchange Act and section 93 of the Bank Act.

Because we hold that section 93 of the Bank Act is not an exclusive federal remedy, and that there was no error in allowing plaintiffs to proceed against C. Arnholt for primary violations of section 10(b) or for alleged violations of state law (pendent claims), the remaining preliminary challenges are necessarily decided. It is unnecessary to consider the other defendants' argument that no secondary section 10(b) violations can properly be asserted unless a primary 10(b) violation is properly asserted. It is also clear that, because both the primary and secondary 10(b) claims were proper, there was an independent federal jurisdictional basis for the court to consider the pendent state claims against the other defendants. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

## II

### *Pendent Claims*

A. *Plaintiffs' Standing Under State Law to Assert Pendent Claims*

The defendants argue that the pendent claims asserted by the plaintiffs are, under California law, derivative claims which could not have been brought on the

plaintiffs' own behalf but only on behalf of the bank.[7] The leading California case on a stockholder's right to sue in an individual capacity is *Jones v. H.F. Ahmanson & Co.,* 1 Cal.3d 93, 460 P.2d 464, 81 Cal.Rptr. 592 (1969). Chief Justice Traynor's opinion in that case recognized the general rule that there is no individual right of action for conduct of majority shareholders and directors which decreases the value of the corporation's stock. It went on to hold, however, that minority shareholders could assert a cause of action for injury to themselves, as opposed to injury to the corporation or injury incidental to the corporation's. *Id.* at 107, 460 P.2d at 471, 81 Cal. Rptr. at 599. The decision stressed the duty of majority shareholders to refrain from using their power to benefit themselves at the expense of the minority shareholders. *Id.*[8]

In this case the district court considered this standing question in light of applicable California authority; it concluded that the duty allegedly violated here was a duty to the shareholders separate from the duty to the bank and that the claimed injury was to the shareholders as individuals. In addition, the court carefully instructed the jury that it should consider only individual injury to the shareholders, i.e., injury separate from any injury to the bank and not incidental to the bank's injury.

We conclude that the district court did not err in its application of California law to the question of the standing of the shareholders to bring the pendent claims. The shareholders were allegedly damaged in that they were induced to buy and hold stock which was worthless and which they would have known was worthless had they

been aware of the defendants' misdeeds. The shareholders' injury is thus greater than the mere diminution of the value of their stock, for which only the corporation or a shareholder acting derivatively may normally seek recovery. The injuries here are properly characterized as "separate individual damages." *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 440 n. 13 (9th Cir.1979).

**B.** *Sufficiency of the Evidence—Pendent Claims*

■ Defendants argue that there was insufficient evidence to support the jury's verdict on fraud, conspiracy to defraud, and conspiracy to abuse control. The principal contention is that plaintiffs failed to show that the defendants' involvement in concealed transactions had any material bearing on the purchase of shares. The record does contain expert opinion on the materiality of the concealed transactions. This opinion testimony was based on the undisclosed nature of the transfers between family-controlled entities, as well as on the size of the transactions. The record contains ample evidence of a conspiracy to misuse C. Arnholt's controlling position. Helen cannot logically maintain that because the jury refused to find that she herself abused control, it could not find that she conspired with C. Arnholt in connection with his abuse. The jury verdicts were supported.

### III

*Class Certification and Related Issues*

**A.** *Class certification*

■ Early in this litigation, before plaintiffs asserted any section 10(b) cause of action, the district court, pursuant to Fed.R.

---

**7.** It is clear that a derivative claim could only have been brought against USNB by the FDIC. *Harmsen I,* 542 F.2d at 500–01 n. 2. *See Landy v. Federal Deposit Insurance Corporation,* 486 F.2d 139, 146–48 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

**8.** California courts have consistently applied the *Ahmanson* analysis to suits brought by individual shareholders. *See, e.g., Smith v. Tele-Communications, Inc.,* 134 Cal.App.3d

338; 184 Cal.Rptr. 571 (1982) (minority shareholder action based on fraud upheld as individual suit); *Crain v. Electronic Memories and Magnetics,* 50 Cal.App.3d 509, 123 Cal.Rptr. 419 (1975) (same). *Cf. Truestone, Inc. v. Travelers Insurance Company,* 55 Cal.App.3d 165, 168, 127 Cal.Rptr. 386 (1976) (suit for diminution of value of shares allowed because not incidental to injury to corporation—third party tortfeasor had independent duty to individual shareholders.)

Civ.P. 23(b)(3), certified a class consisting of USNB shareholders as of October 18, 1973, the date the receiver was appointed. The section 10(b) claims were added to the class complaint after this court's decision in *Harmsen I, supra.*

The defendants correctly argue that only purchasers or sellers of stock have standing to bring a section 10(b) action, *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 754–55, 95 S.Ct. 1917, 1934–35, 44 L.Ed.2d 539 (1975), and that the class certification should have been modified to include purchasers rather than shareholders. However, the erroneous denomination of the certified class was of no practical consequence; the instructions of the district court in the liability phase of the trial expressly required that the jury find against defendants on the section 10(b) and Rule 10b–5 claims only if plaintiffs established that defendants' conduct was "in connection with the purchase or sale of securities." In addition, in the damages phase of the trial, the jury was specifically instructed to find damages based on purchases of stock. Given the district court's specific and unambiguous instructions to the jury that only purchasers of stock could recover, appellants did not suffer any prejudice because the trial court failed formally to certify a subclass of purchasers.

■ Defendants also complain that the district court erroneously failed to comply with Rule 23(c)(3) because the judgment did not describe the members of the class to whom they were liable. The present deficiency in the judgment has not prejudiced defendants and can easily and appropriately be corrected. On remand from this court, the district court shall enter judgment in accordance with Rule 23. *See Newman v. Prior,* 518 F.2d 97, 101 (4th Cir.1975); *Young v. Katz,* 447 F.2d 431, 435 (5th Cir. 1971).

B. *10(b) Standing of class representatives*

■ Helen, Shannon, and Toft all contend that plaintiffs lack standing to pursue section 10(b) claims against them because the two named plaintiffs who testified at trial both purchased their shares before 1968; the jury found that this was the earliest year in which these defendants were actually involved in the securities law violations. Plaintiffs correctly respond that standing must be determined from the pleadings rather than from the liability actually imposed.

The pleadings in this case establish plaintiffs' standing. The Constitution's "case or controversy" requirement (U.S.Const. art. 3, § 2) with respect to standing is met when plaintiffs allege that they have suffered some injury as a result of defendants' illegal conduct. *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). *See also Dupree v. United States,* 559 F.2d 1151, 1153 (9th Cir.1977). Plaintiffs here alleged a series of securities violations and a conspiracy that caused them damages. Defendants may be liable for all the actions of their co-conspirators, even those that occurred before the particular defendants joined the conspiracy. *United States v. Saavedra,* 684 F.2d 1293 (9th Cir.1982); *United States v. Traylor,* 656 F.2d 1326, 1337 (9th Cir.1981). *See also In re Equity Funding Corp.,* 416 F.Supp. 161, 180 (C.D.Cal.1976). Moreover, the factual issues denominated in the pretrial order in this case clearly covered the defendants' participation as aiders and abettors and as conspirators for a period beginning in 1960. The jury found all appellants liable for conspiracy beginning in 1963. The jury was further instructed at the damage phase that it could hold each defendant liable for all damages which accrued during the conspiracy period.

The jury chose, however, to assess damages against each defendant (other than C. Arnholt) for the period the jury found that each was actually involved in C. Arnholt's deceptions. In this way, the jury found Helen, Shannon, and Toft liable only to purchasers who bought their shares after 1968; the named plaintiffs are therefore not able to recover from these defendants.

■ This result does not mean, however, that the named plaintiffs lacked standing.

These plaintiffs had standing to pursue the action in the first instance. Standing ordinarily does not depend upon the merits of a plaintiff's contentions; the requirement is based upon a separate determination that the plaintiffs have made "allegations of demonstrable, particularized injury." *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). As we have stated, "failure of proof as to the named plaintiffs would not bar maintenance of the class action or entry of judgment awarding relief to the members of the class." *Gibson v. Local 40, Supercargoes & Checkers, Etc.,* 543 F.2d 1259, 1263 (9th Cir.1976). *See also East Texas Motor Freight System v. Rodriquez,* 431 U.S. 395, 406 n. 12, 97 S.Ct. 1891, 1897, 1898, 52 L.Ed.2d 453 (1977), where the Court, *citing Franks v. Bowman Transportation Co.,* 424 U.S. 747, 752, 96 S.Ct. 1251, 1258, 47 L.Ed.2d 444 (1976), stated that "[p]rovided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims." All plaintiffs had standing to pursue their section 10(b) claims against the defendants.

**C. *Adequacy of Class Representation***

■ A different question is presented with respect to whether the named plaintiffs were appropriately certified as adequate class representatives under Rule 23(a). A district court's determination as to adequacy of representation will be overturned only if the district court abused its discretion. *Pattillo v. Schlesinger,* 625 F.2d 262 (9th Cir.1980); *Clark v. Watchie,* 513 F.2d 994 (9th Cir.1975). There was no abuse of discretion in this case. Insofar as the defendants argue that the named representatives are not typical of the class members who purchased shares later, their position is contrary to *Blackie v. Barrack,* 524

F.2d 891, 902, 911 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The suit was properly conducted as a class action.

### IV

*Sufficiency of the Evidence—Section 10(b) Claims*

Each defendant was found liable for at least one secondary violation of section 10(b) of the Securities Exchange Act. Helen, Shannon, Toft, John, and FNFC were found liable under an aiding and abetting theory. C. Arnholt, Helen, Shannon, and Toft were found to have conspired to violate section 10(b). Helen and Shannon were found secondarily liable as control persons of a primary section 10(b) violator. The district court limited compensatory damages to the greatest amount assessed under any one count. Because the amounts awarded under the separate section 10(b) secondary counts were identical (and equal to or larger than the amounts awarded under the pendent claims), we need only sustain one secondary violation of section 10(b) as to each defendant in order to sustain the judgment.[9] We conclude that all defendants were properly found liable as aiders and abettors.

■ The elements of a cause of action for aiding and abetting under section 10(b) are: (1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong. *Investors Research Corp. v. SEC,* 628 F.2d 168, 178 (D.C.Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 146 (1980); *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir. 1980); *Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 799 (3d Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978); *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 886 (3d Cir.1975);

---

**9.** Because C. Arnholt does not appeal the adverse verdict under section 93 of the Bank Act, and damages awarded against C. Arnholt under the Bank Act count were greater than damages awarded under any other count, the judgment against him can therefore be sustained without addressing his conspiracy liability under 10(b). His violation of 10(b) is, of course, relevant to consideration of the other defendants secondary liability.

*Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir.1975); *In re Gap Stores Securities Litigation,* 457 F.Supp. 1135, 1143–44 (N.D.Cal.1978); *In re Equity Funding Corp.,* 416 F.Supp. at 180. *See* Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution,* 120 U.Pa.L.Rev. 597, 627–38 (1972).

■ The first element is satisfied by the primary violation of section 10(b) by C. Arnholt. His fraudulent loans, material omissions, nondisclosures, and positive misrepresentations clearly constituted violations of section 10(b) and Rule 10b–5. The jury was properly instructed on the elements of a 10(b) and 10b–5 cause of action, and there is ample record evidence to support these violations.

The existence of the second and third elements as to Helen, Shannon, and Toft is also supported by the record. Although Helen testified that she never discussed USNB with C. Arnholt, the record shows that Helen had numerous business dealings with USNB, including transactions in which she received loans at non-market terms and acquired real property at minimal cost. There is sufficient evidence from which the jury could conclude that she knew that potential investors were being deceived by C. Arnholt. Taken in the light most favorable to the plaintiffs, the evidence also adequately supports the jury's finding that Helen knowingly provided substantial assistance in the fraud. *See IIT,* 619 F.2d at 923–28; *Monsen,* 579 F.2d at 799–801; *cf. Investors Research Corp.,* 628 F.2d at 178.

■ Helen asks us to declare that there can be no liability premised on aiding and abetting a violation of section 10(b). Such a result has been suggested as a possible consequence of the United States Supreme Court decisions in *Touche Ross & Co. v.*

*Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). *See Securities & Exchange Comm. v. Seaboard Corp.,* 677 F.2d 1301, 1311 n. 12 (9th Cir.1982) (dictum); Fischel, *Secondary Liability under § 10(b) of the Securities Act of 1934,* 69 Cal.L.Rev. 80 (1981). However, the Supreme Court has not yet seen fit to follow that suggestion. Further, other circuits have stated that aider and abettor liability under section 10(b) continues to exist. *See Dirks v. SEC,* 681 F.2d 824 (D.C.Cir.1982); *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982); *Stokes v. Lokken,* 644 F.2d 779, (8th Cir.1981); *Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793 (3d Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). Our own decision in *Strong v. France,* 474 F.2d 747 (9th Cir.1973) discusses the methods of establishing aider and abettor liability. In the absence of any authority or compelling reasons for holding that aider and abettor liability no longer exists, we hold that it remains a viable part of securities regulation.

■ Shannon and Toft also argue that aider and abettor liability cannot be applied to them because they were under no duty to disclose to USNB shareholders. *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). This contention blurs the distinction between primary and secondary violations of section 10(b). While C. Arnholt's duty to disclose arises from his position in the bank and his relationship to the shareholders, *id.* at 227–28, 100 S.Ct. at 1114, the secondary violator's duty arises from "knowing assistance of or participation in a fraudulent scheme." *Strong v. France,* 474 F.2d 747, 752 (9th Cir.1973) (quoting *Anderson v. Francis I. duPont and Co.,* 291 F.Supp. 705, 709 (D.Minn.1968)).[10]

**10.** Other cases involving aider and abettor liability have also recognized that such liability exists even when the secondary violator owes no duty to the plaintiffs. *See, e.g., Sirota,* 673 F.2d at 575 (existence or non-existence of duty on part of aider and abettor only relates to degree of scienter needed to prove violation—less scienter suffices when duty present); *IIT,* 619 F.2d at 927 (same); *Monsen,* 579 F.2d at 800 (conscious aiding and abetting liability not predicated on existence of duty).

The record clearly shows that the jury was presented with sufficient evidence surrounding transactions involving both Shannon and Toft from which it could find knowing assistance or participation.

## V
### *The Westgate Instructions*

 The district court instructed the jury to give conclusive effect to certain findings made in the Westgate California Corporation bankruptcy proceedings regarding John's involvement in fraud, including a finding that John was "an integral part of the fraud involving Westgate California Corporation and the United States National Bank . . . ." This court, however, after the trial in this case, reversed the *Westgate* bankruptcy decision, noting that "the record as presented to us is inadequate to support a determination that J.A. Smith behaved inequitably." *Westgate-California Corp. v. First National Finance Corp.,* 650 F.2d 1040, 1044 n. 1 (9th Cir.1981). We now know, therefore, that the *Westgate* findings were not entitled to the conclusive effect that the jury was instructed to give them, and that the instruction was erroneous. *Butler v. Eaton,* 141 U.S. 240, 242, 11 S.Ct. 985, 986, 35 L.Ed. 713 (1891). *Accord, Ornellas v. Oakley,* 618 F. 2d 1351, 1356 (9th Cir.1980); Restatement (Second) of Judgments § 16, comment c (1982) (when a later judgment is based upon an earlier judgment which is set aside or reversed, "[t]he court should then normally set aside the later judgment").

The plaintiffs correctly point out that the record nevertheless contains evidence which would independently support the verdict against John and FNFC. The problem is, however, that it is impossible to evaluate what the jury might have done, had it not been instructed to give conclusive weight to the *Westgate* findings. We recently held that an erroneous instruction in a civil case was harmless error where there was ample evidence for the jury's conclusion. We stated:

> An erroneous ruling which relates to the substantial rights of a party is grounds for reversal unless it affirma-

tively appears from the whole record that it was not prejudicial. *McCandless. v. United States,* 298 U.S. 342, 347–48, 56 S.Ct. 764, 766, 80 L.Ed. 1205 (1936). This is especially true of an error in jury instructions. *Fillippon v. Albion Vein Slate Co.,* 250 U.S. 76, 82, 39 S.Ct. 435, 437, 63 L.Ed. 853 (1919).

*Chancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1316 (9th Cir.1982). Applying that standard, we cannot hold that the error here is harmless. The verdicts against John A. Smith and FNFC must therefore be reversed.

## VI
### *Damages*

Damages were determined by the jury in a proceeding separate from the determination of liability. Each defendant claims a number of errors in the damages phase of the trial.

 Defendants first argue that the calculation of damages was speculative. Defendants are correct in asserting that the plaintiff in a securities fraud action has the burden of proving that damages flowed from the alleged injury. *Rochez Brothers v. Rhoades,* 527 F.2d 891, 894 (3d Cir.1975). *See Mills v. Electric Auto-Lite,* 396 U.S. 375, 388, 90 S.Ct. 616, 623, 24 L.Ed.2d 593 (1969) ("damages should be recoverable only to the extent they can be shown"). Although damages need not be proved to a mathematical certainty, "sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture." *Rochez Brothers,* 527 F.2d at 895. *See also LeLandais & Company v. MDS Atron,* 543 F.2d 421, 424 & n. 5 (2d Cir.), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 777 (1976) (failure to adequately show damages prevents recovery).

 In this case, a special master, appointed by the trial judge, sent questionnaires to USNB shareholders requesting various information, including the date they purchased their shares. Forty-two percent of the questionnaires were returned. From

the information provided, the special master prepared schedules based both upon the actual responses and upon extrapolations from them.

We are persuaded that the procedures used by the trial court do not constitute reversible error. The special master's report was intended to provide information from which the jury could calculate injury to the plaintiff class as a whole. The questionnaires, which included information about dates of share purchases, sufficiently served this purpose. Further, as noted above, the jury was specifically instructed to find damages based upon purchases of stock. The jury was instructed that plaintiffs were required to prove that damages were suffered as "a proximate result of the alleged misleading statements or omission, and the purchase of stock in reliance to [sic] that." [11] It may well be that not all class members will make claims against the defendants. If there are excess damage funds after distribution, the district court should consider any feasible methods of returning that excess, with appropriate interest, to defendants.

Shannon and Toft argue that the procedure was fatally defective because the damages were not awarded with respect to the specific time periods for which the various defendants were found liable. This argument has no basis in fact. The jury was provided with damages forms which specifically indicated the beginning and ending dates of each defendant's liability as determined in the liability phase of the trial. The jury was well aware of the time frame of each defendant's liability.

■ Defendants next argue that no damages can be awarded for conduct after

1968 because plaintiffs' expert testified that USNB stock was worthless as of that date. This argument misconstrues the basis for defendants' liability. Defendants were found liable for failing to disclose material information which would have affected an investor's decision whether to purchase USNB stock. The worthlessness of USNB stock actually evidences the effect of this failure; damages were, in fact, created by the non-disclosures.

Defendants' final argument on compensatory damages is that the district court improperly included certain shareholders in the plaintiff class. These allegedly improper class members were all non-California purchasers, the Franklin National Bank and the Westgate California Insurance Company. Each of the challenged members will be treated in turn.

■ Prior to the district court's instructions on damages, defendants argued that the class eligible for recovery on the pendent claims should not include out-of-state purchasers. Their theory was that non-California purchasers should not be permitted to recover for causes of action based on California law. The district court denied defendants' motion because the issue, raised for the first time some six years after the inception of the suit, had not been introduced in a timely manner.

Even assuming that the district court erroneously denied defendants' motion on grounds of untimeliness, defendants have not demonstrated grounds for barring the out-of-state plaintiffs from obtaining recovery on the pendent claims. The district court would have been required to apply the substantive law of the state in which it sits,

---

11. Proof of each plaintiff's reliance on the misrepresentations or omissions is not a prerequisite to recovery. As we stated in *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), "[t]he amount of damages is invariably an individual question and does not defeat class action treatment.... Individual questions of reliance are likewise not an impedement—subjective reliance is not a distinct element of proof of 10b–5 claims ...."

Further, if omissions or nondisclosures meet the standards of materiality to a reasonable

investor, *see TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976); *Zweig v. Hearst Corp.,* 594 F.2d 1261, 1266 (9th Cir.1979), causation and reliance can be assumed. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Blackie,* 524 F.2d at 906.

With respect to the pendent claims, defendants do not contend that a showing of reliance was necessary, and, if so, that it was lacking in this case.

including choice-of-law rules. *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir.1980). Defendants have failed to show, as required by California law, that the law of other states relating to the pendent claims is significantly different from California's and, more importantly, that the interests of other states would be impaired by application of California law to these non-resident plaintiffs. *Id.; Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 164–66, 583 P.2d 721, 725–27, 148 Cal.Rptr. 867, 871–73 (1978); *Hurtado v. Superior Court,* 11 Cal.3d 574, 579–80, 522 P.2d 666, 669, 114 Cal.Rptr. 106, 109 (1974). There appears no other reason to exclude the out-of-state purchasers from participating in pendent claims arising from conduct in California.

■ Franklin National Bank was the pledgee of USNB stock. Defendants argue that a pledge of stock is not a "purchase or sale" for purposes of section 10(b) and Rule 10b–5. Plaintiffs rely on *Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981), which held that a pledge constitutes an "offer or sale" for purposes of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

Defendants have offered no persuasive reason why a pledge of shares of stock should not similarly satisfy the purchase or sale requirement of section 10(b) and Rule 10b–5. We think this result flows logically from *Rubin.* Cf. *Marine Bank v. Weaver,* 455 U.S. 551, 554 n. 2, 102 S.Ct. 1220, 1222 n. 2, 71 L.Ed.2d 409 (1982) (*Rubin* held that "a pledge of stock is equivalent to a sale for the purposes of the antifraud provisions of the federal securities laws"). As the Court stated in *Rubin:*

> The economic considerations and realities present when a lender parts with value and accepts securities as collateral security for a loan are similar in important respect to the risk an investor undertakes when purchasing shares. Both are relying on the value of the securities themselves, and both must be able to depend

on the representations made by the transferor of the securities, regardless of whether the transferor passes full title or only a conditional and defeasible interest to secure repayment of a loan.

449 U.S. at 431, 101 S.Ct. at 702 (footnote omitted). This language fully supports our conclusion that Franklin National Bank, even though it had less than a complete interest in the pledged shares, should be able to remain in the plaintiff class and recover damages for violations of section 10(b) and Rule 10b–5.

■ The same result is not appropriate for Westgate California Insurance Company. C. Arnholt was the controlling shareholder of that company. Defendants argue that it would be inequitable for a company controlled by the central defendant in a lawsuit to recover as a member of the plaintiff class. We agree. All defendant shareholders were expressly excluded from the plaintiff class. Although Westgate was not a defendant, we think the same principle should apply to an entity that is so closely related to a defendant. Westgate should not recover damages. On remand, the district court should consider whether the inclusion of Westgate [12] in class schedules on damages measurably affected the amount of damages awarded and whether a corresponding reduction in damages is appropriate.

■ Finally, Shannon, Toft, and Helen argue that the punitive damages awards were excessive. We cannot agree. This court will not overturn an award of punitive damages "unless it appears that the jury was influenced by passion or prejudice." *Glovatorium, Inc. v. NCR Corporation,* 684 F.2d 658, 663 (9th Cir.1982); *Moore v. Greene,* 431 F.2d 584, 593–94 (9th Cir.1970). Neither the amount of punitive damages awarded in relation to the compensatory damages nor any other evidence indicates that the jury was influenced by passion or prejudice. The jury was correctly instructed that punitive damages should

---

12. John's argument on this issue refers to shares held by Westgate *Life* Insurance Co., a separate entity from Westgate California Insurance Co. The record shows that the inclusion of shares held by Westgate California Insur-

ance Co. was called into question during examination of the special master, and we assume that these shares are the subject of the present dispute. Westgate California Insurance Co. owned over 41,000 shares of USNB.

only be awarded if the jury believed that the defendants acted with malice. The term malice was correctly defined. The award of punitive damages will not be disturbed.

## VII

### *Conclusion*

The judgments against all defendants except John and FNFC are affirmed. The judgments against John and FNFC are reversed.

The district court must design and execute a claims procedure consistent with this opinion. As recognized by the district court's amendment to judgment, amounts already paid by settling defendants are to be offset. The class of eligible plaintiffs will not include Westgate California Insurance Company.

Affirmed in part; Reversed in part; Remanded.