827 F.2d 558
 Fed. Sec. L. Rep. P 93,374, 24 Fed. R. Evid. Serv. 296
Helen SMITH, Plaintiff-Appellant,
v.
James F. MULVANEY, William B. Conneley, Harold S. Jurgensen,
Floyd A. Blower, William F. Croddy, Douglas R. Giddings,
James K. Guthrie, Ernest W. Hahn, Clement L. Hirsch, Arthur
H. Kaplan, C. Hugh Friedman, and Hollis Roberts, Defendants-Appellees.
 No. 86-6076.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1987.
Decided Sept. 4, 1987.
 
 1
 Kenneth Poovey and Joel H. Mack, San Diego, Cal., for plaintiff-appellant.
 
 
 2
 Mark W. Hansen and Lann G. McIntyre, San Diego, Cal., Thomas J. Ready (argued) and Jeffrey I. Ehrlich, Los Angeles, Cal., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Southern District of California.
 
 
 4
 Before NELSON, BEEZER, and LEAVY,* Circuit Judges.
 
 LEAVY, District Judge:
 Nature of Appeal
 
 5
 Helen Smith brought this action for contribution against the former directors of the United States National Bank of San Diego (Bank) under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The trial court found that a right of contribution existed under Section 10(b) and Rule 10b-5 and that contribution should be apportioned based on the parties' relative culpability. The trial court found, however, that the directors paid their proportionate share of damages in an earlier settlement with the original plaintiff class and on this basis granted the directors' motion for summary judgment on Mrs. Smith's claims for contribution.
 
 
 6
 This court finds the lower court correctly decided that Mrs. Smith had a right of contribution against the directors and that the contribution should be apportioned based upon the parties' relative culpability. However, this court finds a factual question exists as to whether the directors paid their "fair share" of the damages relative to Mrs. Smith. We reverse and remand the case to the trial court to consider this issue.
 
 Facts
 
 7
 This case originated with the insolvency of the Bank on October 18, 1973. Shortly thereafter, its minority shareholders brought a securities fraud action against C. Arnholdt Smith (the Bank's director, officer, chairman, and controlling shareholder), Helen Smith (C. Arnholdt Smith's wife), other Smith family members, and the Bank's directors and officers. The plaintiffs alleged violations of Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. Sec. 78j(b)) and Rule 10b-5 (17 C.F.R. 240.10b-5), the National Bank Act (12 U.S.C. Secs. 21-216d), and pendent claims of fraud, conspiracy to defraud, abuse of control, and conspiracy to abuse control.
 
 
 8
 In 1978, shortly before trial, the Bank's directors settled with the plaintiffs for $722,000. The settlement negotiations and discussions were conducted under the guidance of Magistrate Harry McCue. The trial court approved the settlement pursuant to Fed.R.Civ.P. 23(e) based on a finding that the settlement was "fair, reasonable and in the best interest of the class." The plaintiffs offered to settle with Mrs. Smith and four other parties for $150,000, but the offer was not accepted.
 
 
 9
 At trial Mrs. Smith was found liable for secondary violations of Section 10(b) and Rule 10b-5, common law fraud, conspiracy to defraud, and conspiracy to abuse control. Harmsen v. Smith, 693 F.2d 932, 937 & nn. 4, 5 (9th Cir.1982), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). After appeal the district court entered judgment against her for $4,402,476 in compensatory damages and $750,000 in punitive damages.
 
 
 10
 Mrs. Smith subsequently brought this action for contribution against the directors who had settled with the original class plaintiffs. Mrs. Smith based her contribution action on both the federal and state law violations for which she was held liable. The directors subsequently moved for summary judgment. Upon the director's request, the court took judicial notice of the Harmsen record and files. The trial court held that Mrs. Smith had a right of contribution under Sec. 10(b) and Rule 10b-5 and that the contribution should be apportioned among the parties based on their relative culpability. The trial court found no genuine issue of material fact existed as to whether the directors had paid their proper share of damages, and granted the directors' summary judgment motion on that part of Mrs. Smith's contribution action based on Sec. 10(b) and Rule 10b-5. The court also held that Cal.Civ.Proc.Code Sec. 877 (West 1980) barred Mrs. Smith's right of contribution on the pendent state claims.
 
 
 11
 Mrs. Smith appeals only that portion of the lower court's decision which denied contribution on the federal claims. She argues that the trial court's decision to apportion contribution based on the parties' relative culpability was erroneous. She argues, instead, that contribution should be based on a pro rata standard. Mrs. Smith further contends that regardless of whether a "relative culpability" or a "pro rata" standard is applied, a question of material fact exists as to whether the directors paid their proper share of plaintiffs' damages.
 
 
 12
 I. The Right of Contribution under Section 10(b) and Rule 10b-5
 
 
 13
 We hold that an implied right of contribution exists under Section 10(b) and Rule 10b-5. This is in accord with the other circuits that have decided this issue. See, e.g., Huddleston v. Herman & MacLean, 640 F.2d 534, 557-58 (5th Cir.1981), aff'd in part, rev'd in part, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); Heizer Corp. v. Ross, 601 F.2d 330, 331-34 (7th Cir.1979); Globus, Inc. v. Law Research Serv., Inc., 318 F.Supp. 955, 958 (S.D.N.Y. 1970), aff'd, 442 F.2d 1346 (2d Cir.1971), cert. denied sub nom. Law Research Serv., Inc. v. Blair & Co., 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971).
 
 
 14
 The more difficult question posed by this case is how contribution should be apportioned among the settling and nonsettling defendants. Mrs. Smith contends that contribution should be apportioned on a pro rata basis, whereas the directors argue it should be apportioned according to the parties' relative culpability.[1]
 
 
 15
 Until recently, the few courts that apportioned contribution among defendants in securities fraud cases did so on a pro rata basis. See Wassel v. Eglowsky, 399 F.Supp. 1330, 1370-71 (D.Md.1975), aff'd, 542 F.2d 1235 (4th Cir.1976); Herzfeld v. Laventhol, Krekstein, Horwath & Horwath, 540 F.2d 27, 39 (2d Cir.1976); Globus, Inc., 318 F.Supp. at 958. These courts applied the pro rata measure without analysis. As explained by commentators, the pro rata measure was the most appropriate measure to apply for two reasons. First, the pro rata measure was the easiest to administer. See Douglas & Bates, The Federal Securities Act of 1933, 43 Yale L.J. 171, 178-81 (1933). To implement this measure a court needed only to divide the total damages by the number of defendants held liable. Unlike the relative culpability standard, the pro rata standard did not require the court to determine the extent of each defendant's wrongdoing. A second reason for using the pro rata method was the three express contribution provisions found in the securities laws. These authorize contribution "as in cases of contract."[2] Typical among these is section 9(e) of the 1934 Act, 15 U.S.C. Sec. 78i(e) (1970), which provides:
 
 
 16
 Every person who becomes liable to make any payment under this subsection may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment.
 
 Professor Ruder explains:
 
 17
 The phrase "as in cases of contract" ... aids in answering the question "According to what method is the contribution to be allowed?" Theoretically contribution could be required either on a pro-rata basis or on some basis involving a degree of fault analysis. Since the Securities Acts incorporate the contract standard for contribution between tort-feasors, the pro-rata method used in common law contract cases should apply.
 
 
 18
 Ruder, Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution, 120 U.Pa.L.Rev. 597, 650 (1972).
 
 
 19
 More recently, the pro rata measure has come under fire from both courts and commentators. These critics charge it is inequitable to distribute liability equally among defendants without regard to the extent of their wrongdoing. Due to this inequity, the overwhelming trend has been against the use of the pro rata measure. See McLean v. Alexander, 449 F.Supp. 1251, 1272-77 (D.Del.1978), rev'd on other grounds, 599 F.2d 1190 (3d Cir.1979); Gould v. American-Hawaiian Steamship Co., 387 F.Supp. 163, 171 (D.Del.1974), vacated on other grounds, 535 F.2d 761 (3d Cir.1976); Pepsico, Inc. v. Continental Casualty Co., 640 F.Supp. 656, 662 (S.D.N.Y.1986); see also L. Loss, ALI, Fed.Sec.Code 1418(f)(2) (Draft No. 2, 1976); Adamski, Contribution and Settlement in Multiparty Actions Under Rule 10b-5, 66 Iowa L.Rev. 533, 557 (1981); Fischer, Contribution of 10b-5 Action, 33 Bus. Law. 1821, 1827 (1978); Fruend & Hacker, Cutting Up the Humble Pie: A Practical Approach to Apportioning Litigation Risks Among Underwriters, 48 St.John's L.Rev. 461, 472 (1974).
 
 
 20
 Critics argue that the two reasons for using the pro rata measure are unsound. First, they contend the legislative history is silent with respect to what Congress meant by the phrase "as in cases of contract" in the express contribution provisions. See Gould, 387 F.Supp. at 170, citing, Ruder, supra, at 650. In addition, critics argue that, even at common law, exceptions were made to the general rule of pro rata allocation to prevent an inequitable distribution of damages among defendants. See Gould, 387 F.Supp. at 171, and cases cited therein; see also Fischer, supra, at 1830. The critics surmise that Congress more likely intended the phrase "as in cases of contract" to express a departure from the traditional no contribution rule of tort law, rather than to express the application of the pro rata measure of damages. Gould, 387 F.Supp. at 170; see also McLean, 449 F.Supp. at 1275 n. 81; 3 L. Loss, Securities Regulation 1738 (2d ed. 1961).
 
 
 21
 The critics also argue that the additional administrative convenience provided by application of the pro rata standard is minimal. See McLean, 449 F.Supp. at 1276. They contend that regardless of whether the pro rata or the relative culpability standard is used, the court must make a judicial determination of whether the defendants are liable. Little, if any, additional evidence, they assert, would actually be necessary for the trier of fact to decide each defendant's relative culpability.
 
 
 22
 We find the critics' arguments compelling. The court in McLean described the pro rata standard as having "more mathematical than judicial integrity." McLean, 449 F.Supp. at 1273. That description appears especially appropriate in securities fraud cases which include numerous defendants with potentially vast differences in culpability. Contribution is an equitable doctrine. To apportion damages without regard to fault reduces, to an extent, the equity which the doctrine was intended to provide. In this case, the potential inequity outweighs the slight administrative benefits to be gained from using the pro rata measure. This court, therefore, finds the relative culpability measure appropriate.
 
 
 23
 II. Whether the Settling Defendants Paid Their Proportionate Share
 
 
 24
 The trial court found no genuine issue of material fact existed to dispute that the directors' collective settlement represented their proper share of damages awarded plaintiffs. The lower court found support for this decision in 1) its earlier approval of the directors' settlements pursuant to Fed.R.Civ.P. 23(e), 2) the Harmsen files and records of which it took judicial notice, and 3) its "settled belief" and "perception" that Mrs. Smith was significantly more culpable than the directors. This court finds that the evidence on which the trial court based its decision fails to support adequately a conclusive finding that the settling defendants paid their proper share of damages.
 
 
 25
 In the court's determination of whether to approve a settlement pursuant to Fed.R.Civ.P. 23(e), the court considers factors that relate primarily to interests of the plaintiffs and the settling defendants.[3] See Altman v. Liberty Equities Corp., 54 F.R.D. 620, 623 (S.D.N.Y.1972). The interests of the nonsettling defendants are secondary.[4] Unlike a Rule 23(e) determination, how contribution should be apportioned among defendants turns primarily on the interests of and the relationship between the defendants in the case. See id. The different nature of the two proceedings does not allow a finding that a "fair" settlement was obtained under Rule 23(e) to be used as conclusive proof that a settling defendant has paid its proper share of damages relative to the nonsettling defendants in an action for contribution. The trial court in this case, therefore, improperly relied on the results obtained in its Rule 23(e) hearing as a basis for its decision in this action.
 
 
 26
 The trial court also based its decision on the record and files of the Harmsen litigation of which it took judicial notice. The record does, as the trial court found, reflect that Mrs. Smith was a highly culpable party. There is little, if any, evidence in the record, however, to establish the extent of the settling defendants' culpability and, more importantly, no evidence which either compares or allows a comparison of the extent of the fault of the settling and nonsettling defendants.
 
 
 27
 Finally, the trial court based its decision, in part, on its "settled belief" and "perception" that Mrs. Smith was more culpable than the settling defendants. It is important that a trial judge not "confuse his own knowledge with judicial notice" as his knowledge lacks the requisite indicia of indisputability. C. Wright & K. Graham, 21 Federal Practice and Procedure Sec. 5104, at 192 (1986 Supp.). As stated, the facts of which the trial judge could take judicial notice are inadequate to support a finding that the settling defendants paid their proper share of damages. Thus, this court can give no weight to the trial judge's "perception" of the parties' relative culpability.
 
 
 28
 After de novo review, we find that the three bases for support used by the trial court are inadequate to support its finding that no genuine issue of material fact exists to dispute whether the directors paid their proper share of damages.
 
 
 29
 III. Whether to Reassign to Different Trial Judge
 
 
 30
 Mrs. Smith requests that on remand this court exercise its supervisory powers under 28 U.S.C. Sec. 2106 to reassign the case to a different trial judge. See United States v. National Medical Enters., Inc., 792 F.2d 906, 914 (9th Cir.1986). Remand to a different trial judge is appropriate under a demonstration of personal bias or in "unusual circumstances." See, e.g., Davis & Cox v. Summa Corp., 751 F.2d 1507, 1523 (9th Cir.1985); Sederquist v. City of Tiburon, 765 F.2d 756, 763 (9th Cir.1984). To determine whether "unusual circumstances" exist the court considers:(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
 
 
 31
 United States v. Arnett, 628 F.2d 1162, 1165 (9th Cir.1979) (quoting United States v. Robin, 553 F.2d 8, 10 (2d Cir.1977) (en banc )).
 
 
 32
 We find no evidence of any personal bias by the trial judge in this case. Nor do we believe he would have any difficulty in taking a fresh approach to the case on remand free from any "previously-expressed views or findings." We, therefore, reverse the order granting summary judgment and remand for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Edward Leavy, United States Circuit Judge, at the time of argument was a United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 This court touched upon, but did not decide, the issue in Laventhol, Krekstein, Horwath & Horwath v. Horwitch, 637 F.2d 672 (9th Cir.1980), cert. denied, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 957 (1981). In Laventhol the nonsettling defendants sought contribution from the settling defendants under Sec. 11 of the Securities Act of 1933, 15 U.S.C. Sec. 77k. This court found that the settling defendants' payment to plaintiffs of a mere $8,000 was inadequate to bar the nonsettling defendants' claim for contribution. The court suggested in dicta that had the settling defendants paid "their proper share of damages" they might have avoided liability in the action for contribution. Id. at 675. The court did not elaborate on what it meant by the term "proper share" nor did it discuss the manner in which it might determine whether the settling defendants had paid their "proper share."
 
 
 [2]
 See Sec. 11(f) of the Securities Act of 1933, 15 U.S.C. Sec. 77k(f) (1970); and Secs. 9(e) and 18(b) of the Securities and Exchange Act of 1934, 15 U.S.C. Secs. 78i(e), 78r(b) (1970)
 
 
 [3]
 In Officers For Justice v. Civil Serv. Comm., etc., 688 F.2d 615, 625 (9th Cir.1982), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983), this court identified the following facts to consider in a Rule 23(e) proceeding:
 [T]he strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. [citations omitted].... [The court must] reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.
 
 
 [4]
 Mrs. Smith did not participate in the Rule 23(e) proceeding. We note that at least one court has held that nonsettling defendants lack standing in a Rule 23(e) proceeding to challenge the fairness of a consent judgment to which the settling defendants had stipulated. See Utility Contractors Ass'n v. Toops, 507 F.2d 83, 85-86 (3d Cir.1974); but see Manual for Complex Litigation, Second p 30.44 & n. 99, at 241 (1985) (supplement to C. Wright & A. Miller, Federal Practice & Procedure (1969-1986)). (Advising trial courts to permit attorneys who were excluded from the settlement discussions to present their views)