99 F.3d 289
 146 A.L.R. Fed. 811, 65 USLW 2269, Fed.
Sec. L. Rep. P 99,333,
96 Cal. Daily Op. Serv. 7680,
96 Daily Journal D.A.R. 12,657
 ASDAR GROUP, a Nevada corporation, Plaintiff-Appellant,
v.
PILLSBURY, MADISON AND SUTRO; Joann Taormina; James
Sterrett; Does 1 Through 100, Defendants-Appellees.
 No. 95-55739.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Oct. 17, 1996.
 
 Frederick A. Santacroce, Las Vegas, Nevada, for plaintiff-appellant.
 Mark C. Zebrowski, Gray, Cary, Ware & Freidenrich, San Diego, California, for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California, Irma E. Gonzalez, District Judge, Presiding. D.C. No. CV-95-00147-IEG.
 Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI,* Judge of the United States Court of International Trade.
 FLETCHER, Circuit Judge:
 
 
 1
 Asdar, a Nevada corporation, appeals from the district court's 12(b)(6) dismissal of its complaint against Pillsbury, Madison & Sutro, Joann Taormina, and James Sterrett (hereinafter collectively referred to as "Pillsbury"). Asdar sought contribution and indemnification from Pillsbury under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]
 
 2
 Pillsbury provided legal advice and services[2] to Asdar, a financial services consultant doing business in California, in connection with the registration and promotion of certain securities. These services included drafting and filing all required federal and state documents.
 
 
 3
 Purchasers of various Asdar securities ("plaintiffs") named Asdar as defendant in a federal class action in September 1989, alleging violations of various federal securities laws and state statutes and asserting common-law claims for fraud and negligent misrepresentation. The plaintiffs sought damages of over $2 million. The federal proceedings in the plaintiffs' case took place in the Southern District of California before the Honorable Judith N. Keep.
 
 
 4
 The district court severed the state claims and the plaintiffs brought a separate action in state court, eventually naming Pillsbury as an additional defendant. Asdar cross-complained against Pillsbury in state court in July 1993 seeking indemnity, accounting, and apportionment for any liability imposed upon it in both the state and federal court actions. The state court granted summary judgment for Pillsbury and against the plaintiffs in November 1993 on the ground that since the plaintiffs were neither clients nor intended beneficiaries of Pillsbury's legal services they were owed no duty by Pillsbury. It subsequently granted summary judgment for Pillsbury on Asdar's cross-complaint on the ground that Pillsbury breached no duty to Asdar's shareholders or other plaintiffs, that any legal malpractice claim by Asdar was time-barred by California law, that the court was not the proper forum for a complaint for indemnity based on Rule 10b-5, and that a client has no common-law indemnity action against its attorney. Asdar represented in its opening brief in this appeal that its appeal from the state court's judgment is pending in the state court of appeal.
 
 
 5
 In federal court, the plaintiffs attempted in September 1993 to amend their complaint to name Pillsbury as a defendant, alleging RICO violations and aiding-and-abetting liability. The court denied the motion in October 1993. In March 1994 it denied the plaintiffs' motion for reconsideration of its denial and it entered judgment in favor of Pillsbury even though it had never allowed the plaintiffs to name Pillsbury as a defendant. Pillsbury represented in its brief in this appeal that the plaintiffs never appealed the judgment in favor of Pillsbury.
 
 
 6
 Asdar filed its complaint in this action on February 6, 1995 seeking contribution under federal law, equitable indemnity under state law, and equitable indemnity based on negligence. All federal contributions claims were based on alleged violations of § 10(b), Rule 10b-5, and RICO. This action was assigned to Judge Gonzalez. Pillsbury moved to dismiss the complaint under 12(b)(6).
 
 
 7
 Meanwhile, in the plaintiffs' (the purchasers of various Asdar securities) suit against Asdar, the district court (Judge Keep) on February 14, 1995, after a bench trial, entered judgment in favor of plaintiffs, finding that Asdar made a material misrepresentation in connection with the sale of its securities to the plaintiffs and awarding damages in the amount of $2,519,881.91 for violations of § 10(b) and Rule 10b-5.
 
 
 8
 The district court (Judge Gonzalez), in the action appealed to us, dismissed Asdar's complaint against Pillsbury in April 1995. Asdar conceded the correctness of the dismissal of its RICO contribution and indemnity claims because the judgment in the plaintiffs' case had not awarded any RICO damages. The district court dismissed Asdar's claims for indemnification because Ninth Circuit case law holds that indemnification is not available in 10b-5 actions. Laventhol, Krekstein, Horwath & Horwath v. Horwitch, 637 F.2d 672, 676 (9th Cir.1980), cert. denied, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). Asdar has not challenged this aspect of the district court's ruling. The district court dismissed Asdar's contribution claim as time-barred by the three-year statute of repose imposed on 10b-5 actions by the Supreme Court in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364, 111 S.Ct. 2773, 2782-83, 115 L.Ed.2d 321 (1991). The district court held that the statute began to run either when Pillsbury performed the last relevant legal work for Asdar or when the plaintiffs filed suit against Asdar and that in either case Asdar's contribution action was barred. Asdar timely appeals.STANDARD OF REVIEW
 
 
 9
 A district court's dismissal for failure to state a claim is reviewed de novo. Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995).
 
 DISCUSSION
 
 10
 The Supreme Court held in 1993 that contribution is available to a defendant in a 10b-5 action. Musick, Peeler & Garrett v. Employers Insurance of Wausau, 508 U.S. 286, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993). The question of the statute of limitations applicable to a 10b-5 contribution action appears to be one of first impression in the circuits.[3]
 
 
 11
 I. What Statute Applies?
 
 
 12
 A. Which Law Governs?
 
 
 13
 The usual source for a statute of limitation for an action brought under a federal statute is the statutory text. Unfortunately, because the 10b-5 action is an implied right of action,
 
 
 14
 [t]he text of § 10(b) provides little guidance where we are asked to specify elements or aspects of the 10b-5 apparatus unique to a private liability arrangement ... Having made no attempt to define the precise contours of the private cause of action under § 10(b), Congress had no occasion to address how to limit, compute, or allocate liability arising from it.
 
 
 15
 Musick, 508 U.S. at 295, 113 S.Ct. at 2090. The Supreme Court has recently explained the proper method for resolving questions about 10b-5 actions in such a situation:
 
 
 16
 When the text of § 10(b) does not resolve a particular issue, we attempt to infer how the 1934 Congress would have addressed the issue had the 10b-5 action been included as an express provision in the 1934 Act. For that inquiry, we use the express causes of action in the securities Acts as the primary model for the § 10(b) action. The reason is evident: Had the 73d Congress enacted a private § 10(b) right of action, it likely would have designed it in a manner similar to the other private rights of action in the securities Acts.
 
 
 17
 Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, ----, 114 S.Ct. 1439, 1448, 128 L.Ed.2d 119 (1994) (internal quotation marks and citations omitted) (citing Musick ). The Musick Court explained the rationale for, and the purposes of, this methodology:
 
 
 18
 We [attempt to infer how the 1934 Congress would have addressed the issue had the 10b-5 action been included as an express provision in the 1934 Act in order] to ensure that the rules established to govern the 10b-5 action are symmetrical and consistent with the overall structure of the Act and, in particular, with those portions of the Act most analogous to the private 10b-5 right of action ... [O]ur goals in establishing [those rules are] to ensure the action does not conflict with Congress' own express rights of action, to promote clarity, consistency and coherence for those who rely upon or are subject to 10b-5 liability, and to effect Congress' objectives in enacting the securities laws.
 
 
 19
 Musick, 508 U.S. at 294-95, 113 S.Ct. at 2090 (citations omitted). Thus, the fundamental question is what statute of limitations the 1934 Congress would have chosen for 10b-5 contribution actions if it had included a private right of action under § 10(b) in the 1934 Act.
 
 
 20
 Asdar argues that a state statute of limitations should govern its contribution action because there is no federal statute of limitations expressly applicable to contribution actions under § 10(b) and Rule 10b-5 and because when no federal statute of limitations applies the federal courts as a general rule "borrow" the most closely analogous statute from state law. While Asdar is correct as to the general rule, see, e.g., Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."), that rule does not apply to 10b-5 actions after the Supreme Court's decision in Lampf. The Lampf Court decided that
 
 
 21
 where ... the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period.... When the statute of origin contains comparable express remedial provisions, the inquiry usually should be at an end. Only where no analogous counterpart is available should a court then proceed to apply state-borrowing principles.
 
 
 22
 501 U.S. at 359, 111 S.Ct. at 2780. Lampf makes clear that in determining what statute of limitations Congress would have intended to govern a contribution claim in a 10b-5 action, we must look first to the Securities Act of 1933 and to the 1934 Act.
 
 
 23
 In Musick, the Supreme Court held that contribution is available in 10b-5 actions by divining Congressional intent as to the judicially created 10b-5 action from those express causes of action Congress created in the federal securities laws that are closest "in structure, purpose and intent to the 10b-5 action", those under §§ 9 and 18 of the 1934 Act. 508 U.S. at 295, 113 S.Ct. at 2090. After examining the provisions allowing contribution in those sections (codified at 15 U.S.C. §§ 78i(e), 78r(b)),[4] the Court concluded that consistency required it to adopt "a like contribution rule" for the 10b-5 action. Id. at 297, 113 S.Ct. at 2091.[5] In determining Congressional intent as to limitations on 10b-5 contribution actions, it is therefore particularly appropriate to focus on those provided for §§ 9 and 18.
 
 
 24
 B. Limitations on Express Contribution Actions in Federal Securities Law
 
 
 25
 Sections 9 and 18 contain similar limitations periods. Under § 9, actions must be "brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e). Under § 18, the same one-year and three-year limits apply, but they are triggered by "the discovery of the facts constituting the cause of action" and the accrual of the cause of action, respectively. 15 U.S.C. § 78r(c).
 
 
 26
 This appeal raises the question of whether and how the limitations in §§ 9 and 18 of the 1934 Act apply to contribution actions. The parties have not cited, and we have not found, any reported cases interpreting whether and how these limitations apply to actions for contribution under §§ 9 and 18; indeed, there appears to be a notable paucity of reported case law on the whole subject of contribution under those sections. However, while neither section speaks directly to the limitation of contribution actions, the phrasing of both sections' limitation is comprehensive: "No action shall be maintained to enforce any liability created under" those sections unless brought within the one-year/three-year limitations period. 15 U.S.C. §§ 78i(e), 78r(c) (emphasis added). Each section expressly creates the liability for contribution; indeed, the Musick court noted that the "express contribution provisions in §§ 9 and 18 were, and still are, cited as important precedents because they permit contribution for intentional torts." 508 U.S. at 297, 113 S.Ct. at 2091. The plain language of the statute of limitations in each section thus shows that the one-year/three-year periods apply to actions for contribution.[6]
 
 
 27
 II. When Does the Statute Begin to Run?
 
 
 28
 A. Which Section Governs?
 
 
 29
 Since the one-year/three-year structure governs contribution actions under 10b-5, deciding whether the statute bars Asdar's claim requires us to determine when the statute begins to run. This might seem to raise a question of whether the limitation of § 9 or of § 18 applies to 10b-5 contribution actions. Although each section contains an identical limitations structure, the language of the limitation, as noted above, differs slightly. The three-year limitation period on actions under § 9 begins at the time of the "violation", and the one-year period in that section begins with "the discovery of the facts constituting the violation". In § 18, the one-year period begins with "the discovery of the facts constituting the cause of action ", and the three-year period begins when "such cause of action accrue[s]".
 
 
 30
 The opinion of the Leslie Fay court suggests that this difference should be seen as significant when the action at issue is one for contribution:
 
 
 31
 [T]he existing rule ... is that an action for contribution accrues at the time a judgment is entered against the direct defendant and is paid by him.... [T]he [Musick ] Court did not reach the question whether [§ 9 or § 18] would control the applicable statute of limitations for contribution claims. The section 18(c) rule that begins the limitations period upon accrual is consistent with the long-standing rule governing accrual of contribution claims.... Lampf, even when read in conjunction with Musick, Peeler, does not compel a conclusion that the applicable statute of limitations for a section 10(b) contribution claim is the one-year/three-years from the time of violation rule of section 9(e).
 
 
 32
 Leslie Fay, 918 F.Supp. at 754-55 (internal quotation marks and citations omitted). If this view is correct, applying § 9's limitation to 10b-5 contribution actions would require that the action be brought within three years of the underlying securities violation, while applying § 18's limitation would allow the contribution action anytime within three years of payment of the judgment on the underlying violation.
 
 
 33
 The differences in terminology between § 9 and § 18 do not, however, bear the weight that the Leslie Fay court has placed on them.[7] Section 9 enumerates a host of practices that "shall be unlawful", while § 18 basically provides only that one who makes a false or misleading statement in a required filing "shall be liable ... for damages" to one who trades a security in reliance on the statement. Since § 9 outlaws certain practices, its statute of limitations naturally speaks of a "violation"; since § 18 only creates liability to private persons, its statute of limitations naturally speaks of a "cause of action". Thus, despite the differing language, the statute ordinarily begins to run under each section when a person commits the act that gives rise to liability under that section.
 
 
 34
 B. When Does the Cause of Action for Contribution Accrue?
 
 
 35
 In the context of contribution actions under 10b-5 (or §§ 9 or 18 of the 1934 Act), the fact that the statute of limitations ordinarily begins to run when an act occurs that creates liability under that section leads to the question of when liability for contribution arises. The language of the contribution provisions of §§ 9 and 18 (as well as of § 11 of the 1933 Act) provides evidence of how Congress intended this question to be answered. Those sections allow recovery of contribution to "[e]very person who becomes liable " under their provisions. 15 U.S.C. §§ 77k(f), 78i(e), 78r(b) (emphasis added). At least one court has held that this language "strongly impl[ies] that the right accrues after a judgment is rendered", Nelson v. Quimby Island Reclamation District Facilities Corp., Fed. Sec. L. Rep. p 97,388, 1980 WL 1405 (N.D.Cal.1980).
 
 
 36
 Indeed, "as a rule, the right to contribution becomes complete and enforceable only upon a payment or its equivalent by the claimant discharging, satisfying, or extinguishing the whole or more than his just and equitable share of the common obligation." 18 Am.Jur.2d, Contribution § 11. See also Restatement (Second) of Torts[8] § 886A(2) ("The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share."); id. § 886A comment f ("In order to be entitled to contribution, the tortfeasor seeking it must have discharged the entire claim of the injured person by paying more than his equitable share of the common liability ... [T]here can be no contribution so long as the claim of the original plaintiff is still outstanding."). That this was the rule in the era in which the 1933 and 1934 Acts were adopted can be seen from the Restatement of Restitution, which was drafted between 1933 and 1936. Restatement of Restitution xi-xii (1937). The Restatement provides that "[a] person who, with another, is subject to a duty as to which between the two neither has a prior duty of performance, is entitled to contribution from the other when, and only when, he has discharged more than his proportionate share, if the time for performance has arrived." Restatement of Restitution § 82(1) (1937); see also § 86 (providing that contribution among tortfeasors is generally allowed in accordance with the provisions of §§ 76-85 of the Restatement and noting in comment b that "the rules as to the time when the right of indemnity or contribution arises, as stated in §§ 77 and 82 are applicable"). We therefore hold that a defendant's right to contribution in a 10b-5 action does not arise until a defendant has paid more than her share of the judgment.
 
 
 37
 Given the timing of the accrual of the right to contribution, the general rule for limitation of contribution claims is that "the statute of limitations governing claims for contribution runs from the discharge of the obligation ... so that a third-party claim may be prosecuted notwithstanding the fact that the original plaintiff may not proceed against a third-party defendant directly because his claim has been barred by the statute of limitations". 18 Am.Jur.2d, Contribution § 102. See also Calvin W. Corman, 1 Limitation of Actions § 7.2.2 (1991) ("The right to contribution rests on an implied in law contract.... This right does not arise until the party seeking such relief suffers loss by payment of a judgment or settles the claim involving a greater share of the total debt than the party's proportionate liability. At that time the applicable statute of limitations begins to run."). Again, this appears to have been the rule in the era in which § 10(b) was drafted, as comment b to § 82 of the Restatement of Restitution notes that "[t]he time when the cause of action arises is important ... in fixing the time from which the Statute of Limitations begins to run". See also Restatement of Restitution § 77, comment b ("The Statute of Limitations runs in favor of the principal obligor from the time when payment is made if performance is then due, or from the time for performance if payment is made before such time.").
 
 
 38
 Both the Leslie Fay and the Ades courts applied these "long-standing", Leslie Fay, 918 F.Supp. at 755, and "fundamental", Ades, 1993 WL 362364 at * 16, Fed. Sec. L. Rep. at 97,707, rules to 10b-5 contribution actions and held that the statute begins to run when " 'judgment is entered against the direct defendant and is paid by him' ". 918 F.Supp. at 754-55 (quoting Ades, 1993 WL 362364 at * 16). See also Wassel v. Eglowsky, 542 F.2d 1235 (4th Cir.1976) (defendants in action under § 12(1) of 1933 Act had claim for contribution against parties not sued by original plaintiff, but "[n]o right of contribution accrues ... until [the defendants in the original § 12(1) action] have paid to [the plaintiff] the entire amount to which [plaintiff] is entitled"), overruled on other grounds, Baker, Watts & Co. v. Miles & Stockbridge, 876 F.2d 1101 (4th Cir.1989) (en banc) (holding that no right to contribution existed under § 12 of the 1933 Act). We agree that the statute of limitation on a defendant's action for contribution under § 10(b) does not begin to run until the defendant satisfies the judgment.
 
 CONCLUSION
 
 39
 We hold that the one-year/three-year limitations structure of §§ 9 and 18 of the 1934 Act applies to § 10b contribution actions and that a contribution action accrues when the defendant has satisfied the judgment against her.
 
 
 40
 Because the complaint does not disclose affirmatively that Asdar did not timely commence this action, i.e., within three years after the satisfaction of the judgment against it,[9] the district court erred in dismissing the action as barred by the statute of limitations.
 
 
 41
 REVERSED.
 
 
 
 *
 Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Because this appeal arises from a motion to dismiss under Rule 12(b)(6), the facts are drawn from the complaint and from certain prior court orders and judgments of which the district court took judicial notice
 
 
 [2]
 The legal advice and services were actually provided by Lillick, McHose & Charles, which was subsequently purchased by Pillsbury. We follow the style of the parties and the district court in referring only to Pillsbury
 
 
 [3]
 The District Court for the Southern District of New York has twice considered the question in recent years. The decision in In Re Leslie Fay Companies, Inc. Securities Litigation, 918 F.Supp. 749 (S.D.N.Y.1996), is the only reported decision we have found that has applied the methodology of Musick to the question. In Ades v. Deloitte & Touche, Fed. Sec. L. Rep. p 97,768, available at 1993 WL 362364 (S.D.N.Y.1993), the court considered the question in light of the Supreme Court's ruling in Lampf that a three-year period of repose governs 10b-5 actions, but never adverted to Musick in its discussion of the statute of limitations
 
 
 [4]
 For a discussion of the background of the contribution provisions in the 1933 and 1934 Acts, see Franklin v. Kaypro Corp., 884 F.2d 1222, 1226-1228 (9th Cir.1989)
 
 
 [5]
 The contribution provisions of §§ 9 and 18, which, after Musick, govern 10b-5 contribution actions, both provide that anyone who becomes liable to make payment under those sections "may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment"
 
 
 [6]
 Throughout the rest of this opinion, we focus on the three-year statute of repose rather than on the one-year-after-discovery limitation, because Asdar's claim, if time-barred, is barred by the three-year limit. This appeal therefore presents no question of the application of the one-year limit to 10b-5 contribution actions
 
 
 [7]
 If the differences between § 9 and § 18 carried the significance the Leslie Fay court assigned to them, the Lampf opinion would dictate which section to apply in 10b-5 contribution actions. The Lampf Court recognized the slight differences in terminology among the various one-year/three-year limitation periods in the 1933 and 1934 Acts and decided that "[t]o the extent that these distinctions in the future might prove significant, we select as the governing standard for an action under § 10(b) the language of § 9(e) of the 1934 Act, 15 U.S.C. § 78i(e)". 501 U.S. at 364 n. 9, 111 S.Ct. at 2782 n. 9. It is true that in choosing the § 9 limitation period, the Court "addressed only the statute of limitations applicable to section 10(b) direct claims, not section 10(b) contribution claims" and that the Musick Court "inferred a cause of action for contribution from both sections 9 and 18 ... [and] did not reach the question whether one section or the other would control the applicable statute of limitations for contribution claims". Leslie Fay, 918 F.Supp. at 755. However, the Lampf Court's choice of the language of the § 9 limitation provision as the "governing standard" for 10b-5 actions almost certainly means that that language should also govern 10b-5 contribution actions, since applying the § 9 limitation to 10b-5 direct actions and the § 18 limitation to 10b-5 contribution actions would be inconsistent
 
 
 [8]
 Reliance on the Restatement (Second) of Torts might appear to be at odds with the Congressional direction, in all three express actions in the federal securities laws where contribution is authorized, that anyone who is liable "may recover contribution as in cases of contract ". 15 U.S.C. 77k(f) (§ 11, 1933 Act), 78i(e) (§ 9, 1934 Act), 78r(b) (§ 18, 1934 Act) (emphasis added). The reference to contract cases was natural at that time because "Congress ... likely intended the phrase 'as in cases of contract' to express a departure from the traditional no contribution rule of tort law" that existed at the time the Acts were passed but that no longer exists in tort law. Smith v. Mulvaney, 827 F.2d 558, 561 (9th Cir.1987). Nonetheless, once the principle took hold in tort law, courts have relied heavily on tort principles in determining contribution issues under the federal securities laws
 
 
 [9]
 Because the parties did not raise or brief the issue of whether or not the judgment in the underlying action against Asdar has been satisfied, we do not address that issue. Neither do we address the issue of whether or not Asdar can amend its complaint to state a declaratory judgment claim without first having satisfied the judgment against it