T.C. Memo. 2014-177

UNITED STATES TAX COURT

DELBERT M. BUNCH AND ERNESTINE L. BUNCH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18774-11.                    Filed August 28, 2014.

Ps claimed a deduction for a bad debt loss on their 2006
Schedule A, Itemized Deductions. Ps subsequently filed a Form
1040X, Amended U.S. Individual Income Tax Return, and
characterized the claimed bad debt loss as a theft loss on their
Schedule C, Profit or Loss From Business. R determined that Ps were
not eligible for a theft loss or bad debt loss deduction for the 2006 tax
year and issued a notice of deficiency disallowing a current deduction
for the claimed loss.

Held: Ps are unable to deduct their loss as a theft loss for the
2006 tax year.

Held, further, Ps are unable to deduct their loss as a bad debt
loss for the 2006 tax year.

Delbert M. Bunch and Ernestine L. Bunch, pro sese.

Wesley J. Wong, for respondent.

**[\*2]**     MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  This case is before the Court on a petition for redetermination of a deficiency in income tax respondent determined for petitioners' 2006 tax year.  On or before October 12, 2007, petitioners filed a joint Federal income tax return for the 2006 tax year.  On January 26, 2009, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for the 2006 tax year.  On June 29, 2011, respondent issued to petitioners a notice of deficiency for the 2006 tax year disallowing a deduction for petitioners' claimed bad debt loss of $4,044,096.[1]  In the notice, respondent also determined that petitioners were not allowed to deduct the loss of $4,044,096 as a theft loss.

The only issues for decision are (1) whether petitioners may claim a bad debt deduction of $4,044,096 for the 2006 tax year, and if not, (2) whether petitioners may claim a theft loss of $4,011,696[2] for the 2006 tax year.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the taxable year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

[2]This amount is $4,044,096 reduced to reflect statutory limitations of $100 and 10% of adjusted gross income.  <u>See</u> sec. 165(c)(3), (h).

[*3]                              FINDINGS OF FACT

According to their 2006 Federal income tax return, petitioner Delbert M. Bunch is a broker, and petitioner Ernestine L. Bunch a consultant. At the time the petition was filed, Mr. and Mrs. Bunch resided in Las Vegas, Nevada.

Loan to Mortgage Co.

In 2000 petitioners discovered an opportunity in a newspaper advertisement to invest in U.S.A. Commercial Mortgage Co. (Mortgage Co.). Mortgage Co. raised money from investors and made loans to developers for the construction of real estate. In May 2000 Mortgage Co. created the Diversified Trust Deed Fund (Diversified Fund), an unregistered investment fund. Joseph D. Milanowski, then Mortgage Co.'s president, was actively involved in the Diversified Fund.

On June 26, 2000, petitioners and some of their family members loaned Mortgage Co. $10 million, of which petitioners contributed $4,044,096, in exchange for a promissory note (note). According to the note, petitioners and their colenders were to be paid interest at a rate of 20% per annum, with the principal due one year after the final interest payment. The note provided that the loan was secured by "one or more collateral assignments of deeds of trust." The note contained an acceleration clause which stated that "[u]pon the occurrence of an Event of Default, Lender may declare the entire principal balance of the note then

**[*4]** outstanding * * * to be due and payable immediately." Mr. Milanowski signed the Note on Mortgage Co.'s behalf in his capacity as its president.

In 2001 several loans in Mortgage Co.'s portfolio apparently went into default. Petitioners were not aware of these defaults. They never received any monthly or quarterly statements with respect to their loans. They never knew what Mortgage Co. did with the principal from their note. Petitioners and their family members received their regular interest payments according to the note until March 31, 2006.

Mortgage Co.'s Bankruptcy Proceeding

On April 13, 2006, Mortgage Co. filed for bankruptcy under chapter 11 of the United States Bankruptcy Code. According to its bankruptcy petition, Mortgage Co. had $50-$100 million in assets and $10-$50 million in outstanding liabilities at the time of filing. When Mr. Milanowski pleaded guilty to wire fraud on August 4, 2009, in connection with the Diversified Fund, his plea agreement with the United States stated more specifically that, as of April 13, 2006, when it filed for bankruptcy, Mortgage Co. had approximately $962 million in assets under its management.

On November 17, 2006, Mr. Bunch and a group of unsecured nonpriority claimants related to him filed a proof of claim for $11,358,662 against Mortgage

**[\*5]** Co. in the U.S. Bankruptcy Court for the District of Nevada (bankruptcy court).  Petitioners allege they filed the proof of claim in order to "prove * * * [their] loss and get tax refunds."

Nearly three years later, on July 9, 2009, the bankruptcy court allowed petitioners' claim against Mortgage Co. as a general unsecured claim in the amount of $11,358,662.  The claim's allowance occurred before a $20 million interim distribution to creditors approved by the bankruptcy court on October 27, 2009.  Petitioners received at least one distribution from Mortgage Co.'s bankruptcy estate though the record does not clearly establish its timing.

In a 2006 disclosure statement submitted to the court, Mortgage Co. estimated that it would have sufficient funds to pay 8%-33% of all general unsecured claims after payments to higher priority creditors.  And at a 2007 meeting petitioners were advised that they could expect to recover around $500,000 of their loaned funds.  In November 2012 the chapter 11 bankruptcy trustee reported that the first interim distribution, in late 2009, had covered 4.92% of allowed unsecured claims, on a pro rata basis, and that a second interim distribution in January 2012 had raised the aggregate percentage to 8.8%.  See Second Motion to Extend the USACM Liquidating Trust's Scheduled Termination

**[\*6]** Date at 3, <u>In re USA Commercial Mortgage Co.</u>, No. BK-S-06-10725-LBR

(Bankr. D. Nev. Nov. 14, 2012).[3]

---

[3]A court may take judicial notice of appropriate adjudicative facts at any stage in a proceeding whether or not the parties request it. <u>See</u> Fed. R. Evid. 201(c), (f); <u>see also</u> <u>Nathan v. Boeing Co.</u>, 116 F.3d 422, 425 (9th Cir. 1997) (observing that a court may take judicial notice sua sponte). In general, the court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

As we do here, a court may take judicial notice of pleadings and court orders filed in related proceedings. <u>See</u> <u>Asdar Group v. Pillsbury, Madison & Sutro</u>, 99 F.3d 289, 290 & n.1 (9th Cir. 1996). Ample precedent exists for our reliance on electronic versions available through the official Web site of the U.S. Bankruptcy Court for the District of Nevada. <u>See, e.g.</u>, <u>Marshek v. Eichenlaub</u>, 266 Fed. Appx. 392 (6th Cir. 2008) (holding that court could take judicial notice of information on the Inmate Locator, which enables the public to track the location of Federal inmates, is maintained by the Federal Bureau of Prisons, and is accessed through the agency's Web site, to discover that appellant had been released since the filing of his appeal and conclude that there remained no actual injury which the court could redress with a favorable decision and, thus, dismiss the appeal as moot); <u>Denius v. Dunlap</u>, 330 F.3d 919, 926-927 (7th Cir. 2003) (holding that District Court erred when it refused to take judicial notice of information on official Web site of Federal agency that maintained medical records on retired military personnel, the fact of which was appropriate for judicial notice because it is not subject to reasonable dispute); <u>Protect Lake Pleasant, LLC v. McDonald</u>, 609 F. Supp. 2d 895, 922 n.13 (D. Ariz. 2009) ("Plaintiffs place a great deal of credence in * * * [Federal agency's] website * * * but they did not request that the court take judicial notice of that website. In the exercise of its discretion, however, as Fed. R. Evid. 201(c) allows, the court will take judicial notice of * * * [that] website.").

We emphasize, however, that we take judicial notice of the trustee's report only for the fact of its content, and not for the truth of that content. At trial, neither party introduced documentary evidence to substantiate whether Mr. and Mrs. Bunch in fact benefited from the interim distributions the trustee describes.

[*7]   Donald R. Walker, a member of the Unsecured Creditors' Committee (committee) for Mortgage Co.'s bankruptcy proceeding, testified that the committee learned of "the loss" in the latter part of 2006, just before the bankruptcy plan was confirmed.  During 2006 the committee discussed bringing criminal charges against Mr. Milanowski, and attorneys for some creditors communicated with the Federal Bureau of Investigation (FBI) about prosecuting him.

Mr. Bunch testified that petitioners learned of Mortgage Co.'s bankruptcy and that their loaned funds had been lost or stolen in 2006, through a meeting with Mr. Milanowski and examination of Mortgage Co.'s tax returns and financial statements.  He also testified, however, that Mr. Milanowski did not reveal during the meeting that Mortgage Co. had fraudulently misrepresented its assets and liabilities in its bankruptcy filings, and that petitioners learned only "later" that Mortgage Co.'s reported financials were "untrue".

Tax Returns

Petitioners filed a Form 1040, U.S. Individual Income Tax Return, for taxable year 2006.  They claimed a bad debt deduction of $4,044,096.  On their 2009 Form 1040X, they changed their claimed bad debt deduction of $4,044,096 to a theft loss deduction of $4,011,696.

**[*8]**  On June 29, 2011, respondent issued petitioners a notice of deficiency for taxable year 2006 determining a deficiency in income tax of $74,236.

## OPINION

Petitioners sought to deduct the unrecovered funds they had advanced to Mortgage Co. first as a bad debt loss and later as a theft loss.  We examine both alternatives.  Either way, deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to the deduction claimed.  Rule 142(a); see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84, (1992); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Although section 7491 may shift the burden of proof in specified circumstances, petitioners did not argue, and in any event have not established, that they meet the prerequisites, under section 7491(a)(1) and (2), for such a shift.

## I.  Bad Debt Deduction

An individual taxpayer is entitled to a deduction for a debt, business or nonbusiness, that becomes wholly worthless during the taxable year.  See sec. 166(a)(1); sec. 1.166-5(a)(2), Income Tax Regs.  The distinction between a business bad debt and a nonbusiness bad debt is important because business bad debts offset ordinary income dollar for dollar, see sec. 166(a), (d)(1)(A), while a

**[*9]** nonbusiness bad debt is treated as a loss arising from the sale or exchange of a capital asset held for not more than one year, <u>see</u> sec. 166(d)(1)(B); sec. 1.166-5(a)(2), Income Tax Regs.

The distinction between business and nonbusiness bad debt matters for a second reason, as well. For an individual taxpayer, a deduction may also be allowed for a business bad debt that is only partially worthless, to the extent it is charged off during the taxable year. Sec. 166(a)(2), (d)(1). Business debts are defined in section 166(d)(2) as those "created or acquired * * * in connection with a trade or business of the taxpayer" or "a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." Petitioners' evidence does not show that the debt at issue here is a business debt. Rather, they were merely investors in Mortgage Co. Therefore, the debt was a nonbusiness debt. <u>See Whipple v. Commissioner</u>, 373 U.S. 193, 199-201 (1963).

Because petitioners' loan to Mortgage Co. was a nonbusiness debt, petitioners must establish that the debt was wholly "worthless" within the meaning of section 166 as of the close of 2006, in order to be entitled to a deduction for that year. There is no standard test for determining worthlessness; whether and when a debt becomes worthless depends on all the facts and circumstances. <u>Dallmeyer v. Commissioner</u>, 14 T.C. 1282, 1291 (1950). In general, the year of worthlessness

[*10] must be established by identifiable events constituting "reasonable grounds for abandoning any hope of recovery." Crown v. Commissioner, 77 T.C. 582, 598 (1981). A creditor's determination that there is no hope of recovery of a debt due and owing must be made in the exercise of sound business judgment and based upon information that is as complete as is reasonably obtainable regarding the debtor's financial condition or ability to satisfy the debt, but the creditor need not be an "incorrigible optimist". See Andrew v. Commissioner, 54 T.C. 239, 248 (1970).

On November 17, 2006, petitioners filed a proof of claim in the bankruptcy court against Mortgage Co. "A proof of claim is a written statement setting forth a creditor's claim." Fed. R. Bankr. P. 3001(a). An executed proof of claim that is correctly filed constitutes prima facie evidence of the validity and amount of the claim. Id. para. (f). Once a creditor files a proof of claim and the claim is accepted, or "allowed" by the bankruptcy court, the creditor becomes entitled to participate in any distribution from the bankruptcy estate, to the extent of that creditor's rights relative to those of other creditors in the bankruptcy. See 11 U.S.C secs. 502(a), 726(a) (2012) (providing that creditor's claim, proof of which is filed, is deemed allowed absent objection by a party in interest, and for distribution of bankruptcy estate in payment of allowed claims). Petitioners allege

[*11] they filed the proof of claim in order to "prove * * * [their] loss and get tax refunds."

Even if we were to accept that the proof of claim established the amount of petitioners' loss, the document does not establish that petitioners had no hope of recovery in 2006. On the contrary, it tends to establish the reverse: By filing a proof of claim in Mortgage Co.'s bankruptcy, petitioners took the requisite step to secure a place in the order of distribution from the bankruptcy estate and thereby increased their odds of recovering at least some of the loaned funds.

Moreover, in 2006 there was no clear indication of what Mortgage Co.'s assets and liabilities were. Mortgage Co. asserted that it had excess assets, and the truth or falsity of this assertion was neither revealed in the bankruptcy proceeding nor otherwise known to petitioners until after 2006. Further, as of the end of 2006, the bankruptcy court had yet to allow or disallow petitioners' claim, so they could not know definitively what portion of their loss, if any, might be satisfied from the bankruptcy estate. Hence, the information reasonably obtainable by petitioners indicated they had some hope of at least a partial recovery as of December 31, 2006. That hope would not have been vain. Three years later, the bankruptcy court authorized partial repayment of unsecured creditors like petitioners by way of two interim distributions.

**[*12]** Accordingly, petitioners are not entitled to deduct a bad debt loss for 2006 because they could not establish, by the end of the 2006 tax year, the amount of their loan that they were not going to recover from Mortgage Co.

II. The Theft Loss Deduction

Section 165(a) permits a deduction against ordinary income for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." For individuals, the deduction is limited to: "(1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) * * * losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." Sec. 165(c).

A taxpayer who, like petitioners, claims a loss deduction due to theft pursuant to section 165(c)(3) must prove two elements to properly substantiate a deduction. First, the taxpayer must prove that the loss is attributable to a theft that was established as such in the year for which the deduction is claimed. And second, because section 165(a) allows the deduction for the year in which a loss is "sustained", the taxpayer must demonstrate that the loss was incurred in the year for which the deduction is claimed. Petitioners have not proven that--as of

[*13] December 31, 2006--because of a theft, they had no hope of recovering any of the funds they had loaned to Mortgage Co.

The term "theft" in section 165(c)(3) is a word of general and broad meaning that includes any criminal appropriation of another's property, such as theft by swindling, false pretenses, and other forms of guile. Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956); sec. 1.165-8(d), Income Tax Regs. Whether a theft loss has been established depends upon the law of the State where the alleged theft occurred. Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), aff'g 61 T.C. 354 (1973); Luman v. Commissioner, 79 T.C. 846, 860 (1982); Paine v. Commissioner, 63 T.C. 736, 740 (1975), aff'd without published opinion, 523 F.2d 1053 (5th Cir. 1975). A taxpayer must prove a theft occurred under applicable State law by only a preponderance of the evidence. See Allen v. Commissioner, 16 T.C. 163, 166 (1951) ("If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail. If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail.").

In 2009 Mr. Milanowski pleaded guilty to wire fraud; however, a criminal conviction is not necessary in order for a taxpayer to demonstrate a theft loss. See Monteleone v. Commissioner, 34 T.C. 688, 694 (1960). Petitioners and Mr. Walker testified that they discovered Mortgage Co.'s losses in 2006. Additionally,

**[\*14]** according to Mr. Walker, in 2006 the Committee discussed bringing criminal charges against Mr. Milanowski. The Committee had been talking with the FBI in 2006 about a criminal investigation of Mr. Milanowski. Petitioners have not provided enough evidence to prove, using only information available in 2006, that Mr. Milanowski was a thief even under the lesser standard of preponderance of the evidence.

Even if the Court were to accept that petitioners could have proven Mr. Milanowski a thief in 2006, they would still need to prove that they "sustained" a theft loss in 2006. Generally, a theft loss is treated as sustained during the taxable year in which the taxpayer discovers it. Sec. 165(a), (e). However, even after a theft loss is discovered, if a claim for reimbursement exists during the year of the loss with respect to which there is a reasonable prospect of at least some recovery, then a theft loss is treated as "sustained" only when it can be ascertained, with reasonable certainty, whether such reimbursement for the loss will be obtained and the amount thereof. <u>Jeppsen v. Commissioner</u>, 128 F.3d 1410, 1414 (10th Cir. 1997), <u>aff'g</u> T.C. Memo. 1995-342;[4] secs. 1.165-1(d)(2)(i), (3), 1.165-8(a)(2),

---

[4]As the Court of Appeals for the Tenth Circuit explained:

Under the Internal Revenue Code, a theft loss is <u>not</u> "sustained" at the time the theft actually occurs. Rather, "any loss arising from theft

(continued...)

**[\*15]** Income Tax Regs. Stated differently, a reasonable prospect of recovery will postpone the theft loss deduction until such time as the prospect no longer exists.[5]

---

[4](...continued)
shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." I.R.C. § 165(e). Further, the Treasury Regulations provide that even after a theft loss is discovered, if a claim for reimbursement exists during the year of the loss with respect to which there is a reasonable prospect of recovery, then a theft loss is treated as "sustained" only when "it can be ascertained with reasonable certainty whether or not such reimbursement [for the loss] will be obtained." Treas. Reg. §§ 1.165-1(d)(2)(i), 1.165-1(d)(3); accord Treas. Reg. § 1.165-8(a)(2). In essence, this has been interpreted to mean that the existence of a claim of reimbursement with a reasonable prospect of recovery will prevent a loss from being considered as "sustained" unless and until it is determined with reasonable certainty that such reimbursement will not be obtained. See, e.g., Rainbow Inn, Inc. v. Commissioner, 433 F.2d 640, 643-44 (3rd Cir. 1970).

Jeppsen v. Commissioner, 128 F.3d 1410, 1414 (10th Cir. 1997), aff'g T.C. Memo. 1995-342.

[5]Petitioners specifically sought to deduct a theft loss pursuant to sec. 165(c)(3), but sec. 165(c) has two additional paragraphs. As we have concluded, see supra p. 9, petitioners' loan to Mortgage Co. was not connected to a trade or business, so sec. 165(c)(1) would not apply. Because they made the loan as an investment, a transaction entered into for profit unconnected with a trade or business, sec. 165(c)(2) could potentially apply. To deduct their loss pursuant to that provision, however, petitioners would still be obliged to establish that they sustained the loss in 2006. See sec. 165(a). To do so, they would need to show that the loss was "fixed by identifiable events occurring in" 2006. Sec. 1.165-1(d)(1), Income Tax Regs. However, as with a theft loss, where "there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery," no portion of a loss claimed pursuant to sec. 165(c)(2) is treated as

(continued...)

**[\*16]** Petitioners have the burden of proving they have sustained a theft loss.  <u>See</u> Rule 142(a).

Petitioners attempted to establish their loss by filing a proof of claim in Mortgage Co.'s bankruptcy proceeding.  For the reasons explained above, petitioners have not shown that there was no reasonable prospect of recovery as of the end of the 2006 tax year.  In fact, petitioners did recover at least some portion of their claimed loss, though the record does not clearly establish whether this recovery occurred in 2007 and/or in a subsequent year.  Consequently, neither the amount of the bad debt nor the amount of the theft loss was established by December 31, 2006, and no deduction under either section 165 or section 166 is allowable for petitioners' 2006 tax year.

We have considered all remaining arguments the parties made and, to the extent not addressed, we conclude they are irrelevant, moot, or meritless.

---

[5](...continued)
having been sustained "until it can be ascertained with reasonable certainty whether or not such reimbursement will be received."  Sec. 1.165-1(d)(2)(i), Income Tax Regs.  Had petitioners sought to deduct their loss for the 2006 taxable year pursuant to sec. 165(c)(2) rather than sec. 165(c)(3), we would accordingly follow a similar analysis.

**[*17]**  To reflect the foregoing,

Decision will be entered under

Rule 155.
