NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOCIAL LIFE NETWORK, INC., | No. 22-55774 |
| Plaintiff-Appellant, | D.C. No. 3:21-cv-00767-L-MDD |
| v. | |
| LGH INVESTMENTS, LLC; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted May 11, 2023
San Francisco, California

Before: S.R. THOMAS, CHRISTEN, and BRESS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge S.R. THOMAS.

Social Life Network, Inc. (Social Life) appeals from the district court's

dismissal under Federal Rule of Civil Procedure 12(b)(6) of Social Life's complaint

against LGH Investments, LLC, Lucas Hoppel, and J.H. Darbie & Co. (collectively,

"LGH") concerning Social Life's April 2019 loan agreement with LGH. We review

the grant of a Rule 12(b)(6) motion de novo. *Nguyen v. Endologix, Inc.*, 962 F.3d

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

405, 413 (9th Cir. 2020).  We have jurisdiction under 28 U.S.C. § 1291.  We affirm in part and reverse in part.

1.    The district court properly concluded that Social Life's claim under § 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b), is untimely. "[W]here, as here, the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period."  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 359 (1991).  For implied causes of action under the Exchange Act, the proper limitations period is "a 1-year period after discovery combined with a 3-year period of repose."  *Id*. at 360 (citing 15 U.S.C. §§ 78i(e), 78r(c)); *see also Asdar Grp. v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 294 (9th Cir. 1996) (holding that "the one-year/three-year structure governs" causes of action that are implied under § 10(b) of the Exchange Act).  For the 1-year period, the clock starts to run "when the litigant first knows *or with due diligence should know* facts that will form the basis for an action."  *Merck & Co. v. Reynolds*, 559 U.S. 633, 646 (2010) (quoting 2 C. Corman, Limitation of Actions § 11.1.1, at 134 (1991 & 1993 Supp.)).

Social Life executed its loan agreement with LGH on April 11, 2019.  On this date, Social Life could have determined with reasonable diligence that LGH was not a registered securities dealer, which was a matter of public record.  Social Life's

2

Exchange Act claim, brought more than a year later in April 2021, is therefore time-barred.  Contrary to Social Life's contention, the "continuing violation" doctrine does not extend the statute of limitations here.  Under that doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (per curiam) (citation omitted).  Social Life's Exchange Act claim is not based on LGH repeatedly exercising its warrant to purchase stock, but on the singular event of LGH allegedly entering an unlawful contract.  Thus, the limitations period began to run in April 2019, and the continuing violations doctrine does not apply.

2.     The district court erred in concluding that the financing agreement was exempt from California's usury laws.  California Corporations Code § 25118(b) provides that the "purchasers or holders" of "[a]ny one or more evidences of indebtedness . . . shall be exempt from the usury provisions of the California Constitution if . . . [t]he evidences of indebtedness aggregate at the time of issuance at least three hundred thousand dollars ($300,000) in original face amount . . . ."  The district court concluded that LGH was exempt under this provision because Social Life had received several loans from different lenders that, in "aggregate," exceeded $300,000 by July 2019, a few months after its agreement with LGH.

California courts have not resolved whether § 25118(b) aggregates "evidences

3

of indebtedness" across multiple lenders. We thus must predict how California courts would resolve this question. *See, e.g.*, *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). Because § 25118(b) is a California statute, we follow California's rules of statutory interpretation. *See Killgore v. SpecPro Pro. Servs.*, LLC, 51 F.4th 973, 983 (9th Cir. 2022). We thus "first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction." *MacIsaac v. Waste Mgmt. Collection & Recycling, Inc.*, 36 Cal. Rptr. 3d 650, 655 (Ct. App. 2005) (citation omitted).

We conclude that the most logical and internally consistent interpretation of § 25118(b), and the one most consonant with the statutory text, is that § 25118(b) exempts borrowers from usury protections when their "evidences of indebtedness" with a single lender aggregate to $300,000 "at the time of issuance." Nothing in § 25118(b) indicates that the provision "aggregate[s]" evidences of indebtedness from transactions with different lenders. *Cf. Agapitov v. Lerner*, 133 Cal. Rptr. 2d 837, 843 (Ct. App. 2003) ("[T]he constitutional usury provision protecting borrowers should be read broadly, and exemptions should be read strictly.").

LGH's contrary interpretation is not only less supported by the statutory text, but also poses other problems. An interpretation of "aggregate" that includes loans from other lenders would lead to the unusual result of loans initially subject to the usury laws becoming retroactively exempt from those laws when the borrower later

4

acquires more than $300,000 in cumulative debt. In addition, basing § 25118(b)'s exemption on aggregate loans from all lenders would pose practical hurdles for lenders seeking to ascertain whether a high-interest loan is subject to California's usury laws. When § 25118 requires lenders to consider information about borrowers, it does so explicitly. *See* Cal. Corp. Code § 25118(a) (requiring lenders to evaluate the assets of borrowers based on their "most recent financial statements"). The absence of any guidance in § 25118(b) as to borrowers sharing financial information or how loans should be aggregated across multiple lenders suggests that the aggregation rule in § 25118(b) does not extend beyond a single lender.

Because we think the text sufficiently supports Social Life, LGH's proffered legislative history is unnecessary to our decision. But we note that in explaining both how § 25118(b) applies to a "transaction" and how it is based on a New York statute that does the same, the legislative history more probably supports Social Life's position.[1]

LGH fairly responds that Social Life is a sophisticated outfit and that the usury

---

[1] We decline Social Life's request to certify this issue to the California Supreme Court because it is sufficiently clear that § 25118(b) does not call for the aggregation of loans across multiple lenders. We note that because LGH made only one loan, we need not consider whether the statute requires aggregation of multiple loans by the same lender. Social Life's Request for Judicial Notice (Dkt. No. 15) is GRANTED.

laws are supposed to exempt from their protections those companies that "by reason of their own business and financial experience or that of their professional advisers, could reasonably be assumed to have the capacity to protect their own interests in connection with the transaction." Cal. Corp. Code § 25118(f)(2). But to implement this statutory purpose, California has enacted the specific rules in § 25118(b), which do not exempt LGH's loan. The specific provisions of the statute, and not the broader statutory purpose, must govern. *Spotlight on Coastal Corruption v. Kinsey*, 271 Cal. Rptr. 3d 867, 881 (Ct. App. 2020) ("Particular provisions of law ordinarily prevail over more general provisions.").

Because LGH's loan did not exceed $300,000, it is not exempted from California's usury laws under § 25118(b). Importantly, this does not mean that LGH's loan to Social Life was, in fact, usurious. Although LGH asks that we affirm the district court on this alternative ground, this issue is properly left to the district court in the first instance.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**[2]

---

[2] The parties shall bear their own costs on appeal.

Social Life Network, Inc. v. LGH Investments, LLC; No. 22-55774

S.R. THOMAS, Circuit Judge, concurring in part and dissenting in part:

I agree that the district court properly concluded that Social Life's claim under § 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b), is untimely. However, I would hold that the district court also properly concluded that the financing agreement was exempt from California's usury laws, for the reasons given by the district court. Therefore, I concur in part and respectfully dissent in part.